IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>for the Use and Benefit of )<br>JERSEY SHORE AUTOMATION, INC. )<br> )<br>Plaintiff, )<br> )<br>vs. )<br> )<br>CHUGACH SUPPORT SERVICES, INC., *et al.* )<br> )<br>Defendants )<br> ) | C. A. No. 04-1416 (JJF) |

**BRIEF OF DEFENDANTS
CHUGACH SUPPORT SERVICES, INC.
AND SAFECO INSURANCE COMPANY OF AMERICA
IN SUPPORT OF MOTION TO DISMISS IN PART,
OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT**

THE LYONS LAW FIRM

Edmund Daniel Lyons (No. 0881)
1526 Gilpin Avenue
P.O. Box 579
Wilmington, DE 19806
Phone (302) 777-5698
Fax (302) 777-5051
Email: elyons@lyonslaw.com

Dated: May 3, 2005

BIRCH, HORTON, BITTNER AND CHEROT

Harvey A. Levin
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC 20036
Phone (202) 659-5800
Fax (202) 659-1027
Email: hlevin@dc.bhb.com

Counsel for Chugach Support Services, Inc. and
Safeco Insurance Company of America

# TABLE OF CONTENTS

Table of Authorities...............................................................................................................i

INTRODUCTION.................................................................................................................1

NATURE AND STAGE OF PROCEEDING................................................................1

SUMMARY OF ARGUMENT........................................................................................3

STATEMENT OF FACTS..................................................................................................5

ARGUMENT.......................................................................................................................10

      I. The Complaint Fails to State a Claim on
      Which Relief Can Be Granted Because
      There Is No Set of Facts That Gives Rise
      to a Contractual, Quasi-Contractual
      or Other Obligation of Chugach to
      Jersey Shore with Respect to the Pricing
      of the Government's Award of the
      SABER Contract to Chugach.....................................................................................11

           A. There Is No Provision in Any
           Agreement Between Chugach and
           Jersey Shore, or to Which Jersey Shore
           Was an Intended Beneficiary,
           Obligating Chugach as a Matter of
           Contract Law to Jersey Shore with
           Respect to Chugach's Pricing Determinations.........................................................11

           B. The Federal Davis-Bacon Act,
           Well Publicized and Well Known
           to Jersey Shore, Required Jersey Shore
           to Pay Federally Prescribed Wage Rates
           Regardless of Jersey Shore's, Chugach's
           or the Government's Basis for Pricing Any Work.....................................................15

II. In the Alternative, the Complaint Must
be Dismissed Because on the Undisputed Facts
and as a Matter of Law, Chugach Had
No Contractual, Quasi-Contractual or Other
Obligation to Jersey Shore with Respect to
the Pricing of the Government's Award of
the SABER Contract to Chugach.......................................................................................16

III. To the Extent That the Complaint Seeks Relief
Based on or Arising Out of Allegations Relating to
Chugach's Allegedly Failing to Process Invoices
for Payment in a Timely Fashion and
Failing to Request or Issue Change Orders,
the Complaint Must Be Dismissed, or in the Alternative
Chugach Is Entitled to Summary Judgment,
as, per Jersey Shore's Initial Disclosures,
Jersey Shore Suffered and Seeks Recovery
of No Damages Arising out of Such Allegations..................................................................17

CONCLUSION.......................................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256 (3d Cir. 1998)......................................1

*First Hartford Corp. Pension Plan & Trust v. U.S.*,
194 F.3d 1279 (Fed. Cir. 1999)..............................................................................................15

*Haft v. Dart Group Corp.*, 877 F. Supp. 896 (D. Del. 1995)..........................................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).......................................17

*Mayor and Council of Wilmington v. Recony Sales and Engineering Corp.*,
55 Del. 129, 185 A.2d 68 (Del. 1962).......................................................................................13

*MBIA Ins. Co. v. Royal Indemnity Co.*, 294 F. Supp.2d 606 (D. Del. 2003)...................................14

*Pasquel v. Owen*, 186 F.2d 263 (8th Cir. 1950)..............................................................................18

*PBGC v. White Consolidated Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993),
*cert. denied*, 510 U.S. 1042 (1994)............................................................................................1

*Universal Bonding Ins. Co. v. Gitens and Sprinkle Enterprises, Inc.*,
960 F.2d 366 (3d Cir. 1992)...............................................................................................14-15

*Vepco v. Div. of Facilities Management*, 1982 WL 116988 (Del. Ch. 1982)...................................13

## Statutes

Davis-Bacon Act, 40 U.S.C. § 3141 *et seq*.............................................................................*passim*

## Federal Acquisition Regulations

48 C.F.R § 52.222-6.........................................................................................................................9

48 C.F.R § 52.222-11................................................................................................................9, 14

i

**Rules**

Federal Rule of Civil Procedure 12(b)(6)...............................................................................1, 13, 18

Federal Rule of Civil Procedure 26(a) ......................................................................................1, 17

Federal Rule of Civil Procedure 56.........................................................................................1, 18

Local Rule 7.1.2........................................................................................................................1

Local Rule 7.1.3........................................................................................................................1

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative Federal Rule of Civil Procedure 56, and Local Rules 7.1.2 and 7.1.3, Defendants Chugach Support Services, Inc. and Safeco Insurance Company of America, by undersigned counsel, respectfully move to dismiss the Complaint, or in the alternative for partial summary judgment on the Complaint, dismissing Plaintiff's claims arising out of and with respect to (i) Chugach's alleged mistakes in calculating, and alleged incorrect calculations of, wage rates and (ii) Chugach's allegedly failing to process invoices in a timely fashion and failing to issue change orders, on the grounds that such allegations fail to state a claim upon which relief can be granted or, in the alternative, there are no genuine disputes of material fact and Defendants are entitled to judgment as a matter of law with respect to such claims.[1]

## NATURE AND STAGE OF PROCEEDING

This matter is a construction dispute between Defendant Chugach Support Services, Inc. ("Chugach"), as contractor with the United States of America under the Simplified Acquisition of Base Engineering Requirements Contract F07603-03-D-0002 (together with subsequent amendments, the "SABER Contract") for construction projects at Dover Air Force Base, Delaware ("DAFB"), and Jersey Shore Automation, Inc. ("Jersey Shore"), subcontractor to Chugach under the Master Subcontract Agreement dated May 13, 2003 (the "MSA"). Under the MSA, Chugach

---

[1] The documents referenced below and included in the Appendix are, with two exceptions, documents that the Complaint cites and on which the Complaint expressly relies. The first exception is Plaintiff Jersey Shore's Rule 26(a)(1) Initial Disclosures, which Jersey Shore served pursuant to Fed. R. Civ. P. 26(a) and this Court's Rule 16 Scheduling Order dated April 19, 2005. The second exception are the federal Forms 1413 that Jersey Shore submitted to the Government as required by referenced documents and the Federal Acquisition Regulations. Therefore, this motion may be considered as a Rule 12(b)(6) motion, without the necessity of converting it to a Rule 56 motion. *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *PBGC v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).

issued to Jersey Shore and Jersey Shore accepted contracts for particular construction projects at DAFB, each such contract taking the form of a Delivery Order with Notice to Proceed ("DO/NTP").

In its Complaint, Jersey Shore claims that Chugach breached its contract with Jersey Shore by, *inter alia*, (i) incorrectly calculating the wage rates used in pricing the construction projects, (ii) failing to pay for completed work, (iii) failing to process invoices in timely fashion and (iv) failing to issue change orders. In its Counterclaim, Chugach claims that Jersey Shore (i) failed to undertake, proceed with and complete the construction for which Jersey Shore was contractually obligated and (ii) wrongfully suspended its work and vacated its construction projects at DAFB on July 14, 2004, leaving Chugach to complete the work.

The pleadings are closed, subject to motions, if any, to amend the pleadings which must be filed by June 30, 2005. The parties exchanged initial disclosures on April 22, 2005 and are entitled to engage in discovery.

By this motion, Chugach seeks the partial dismissal of Jersey Shore's claims to the extent that they allege or arise out of an alleged incorrect calculation of wage rates used to price the construction work in the SABER Contract with the Government. In brief, Jersey Shore relies on the wage-rate calculation provision of the SABER Contract (i) that bound all bidders, Chugach included, in their pricing proposals to the Government; (ii) that is for the Government's benefit; (iii) as to which Jersey Shore has no right, interest or expectation; (iv) that was not the basis for the wages and other costs that Jersey Shore had to pay; and (v) from which Jersey Shore suffered no harm.

Additionally, Chugach seeks dismissal of any claims arising out of or related to Chugach's alleged untimely processing of invoices and allegedly failing to issue change orders, on the grounds that Jersey Shore suffered and seeks no damages arising out of these allegations.

2

## SUMMARY OF ARGUMENT

1. Jersey Shore was a subcontractor to Chugach under Chugach's main contract with the Government (the SABER Contract) to undertake construction projects at Dover Air Force Base. The SABER Contract solicitation, incorporated into the SABER Contract, dictated the method by which the contractor and the Government would determine the price that the Government would pay to the contractor for the work, using a common unit price guide know as "R.S.Means®."

2. In the Chugach-Jersey Shore subcontract (the MSA), Chugach made no express or implied promise to Jersey Shore, and owed Jersey Shore no express or implied contractual obligation, with respect to Chugach's and the Government's determinations on pricing following the formula dictated by the solicitation for, and in, the SABER Contract.

3. Pursuant to the MSA between Chugach and Jersey Shore, Jersey Shore expressly was not obligated to accept any "Work" (as defined), nor could Chugach compel Jersey Shore to accept any Work, except as Jersey Shore in its sole judgment determined to accept and at a price that was agreeable to Jersey Shore.

4. The DO/NTPs between Chugach and Jersey Shore were fixed, lump-sum price agreements, not "time and materials" or any other type of contract that expressed and determined contract price based on labor rates, material prices or any other discrete criteria. In each DO/NTP, Jersey Shore agreed and committed to perform the required construction work for an all-inclusive, fixed price, subject only to change orders, and to complete the work by dates certain.

5. Other than the separate, single, agreed lump-sum amounts for Jersey Shore's work in each DO/NTP, neither the MSA nor the DO/NTPs contained any representation, commitment or agreement by, from or binding Chugach with respect to the determination of the price at which

3

Jersey Shore agreed to accept and complete the Work or contained any representation, commitment or agreement by, from or binding Chugach with respect to the make-up or calculation of the components – wage rates or otherwise – of such prices.

6. Particularly, without limiting the foregoing, Chugach did not represent, commit to, agree to or guarantee any wage rate to Jersey Shore for any task to be performed by Jersey Shore.

7. Rather, under the federal Davis-Bacon Act, Jersey Shore was required to pay (as was Chugach and any other contractor or subcontractor) certain published wage rates regardless of the amount that Jersey Shore agreed to accept for performing the DO/NTPs (wage rates that Chugach, likewise, had to pay its workers regardless of the project price on which Chugach and the Government had agreed).

8. That Jersey Shore may have seriously underestimated the actual Davis-Bacon wages it would have to pay is solely Jersey Shore's fault and not a contractual responsibility of Chugach.

9. Accordingly, Jersey Shore has no claim against Chugach for any alleged mistake that Chugach may have made (which Chugach denies) in its internal determinations of wage rates and in its pricing of tasks under, and as agreed to by the Government in, the main SABER Contract.

10. Additionally, Chugach seeks dismissal of all claims relating to or arising out of Chugach's allegedly failing to process invoices for payment in a timely fashion and allegedly failing to issue change orders, on the grounds that according to Jersey Shore's Initial Disclosures, Jersey Shore suffered no damages and seeks no recovery of damages in this action arising out of such allegations.

4

## STATEMENT OF FACTS

1. On or about February 21, 2003, the United States of America awarded Chugach, and Chugach and the United States of America entered into, the Simplified Acquisition of Base Engineering Requirements Contract F07603-03-D-0002 (together with subsequent amendments, the "SABER Contract"). *See* Appendix Exhibit 1.

2. The SABER Contract was an indefinite delivery, indefinite quantity (known as "IDIQ") contract for construction, repair and renovation of various facilities at Dover Air Force Base, Delaware ("DAFB"). Under the SABER Contract, the Government would award individual construction projects by delivery orders on an as-needed basis. The SABER Contract required Chugach, as prime contractor, to furnish all personnel, equipment, tools, materials, supervision and other services necessary to design, manage and accomplish the required work. Fulfillment of each delivery order was, in essence, on a "turn key" basis, in compliance with the SABER Scope of Work and Technical Specifications and standard, national building and construction codes. *See* SABER Contract, Appendix Exhibit 1, at CSS 000002, first paragraph ("The contractor shall perform any and all functions called out in the contract per the scope specified in individual delivery orders."); at CSS 000031, paragraph entitled "Scope of Work" ("This is an indefinite delivery, indefinite quantity (IDIQ) contract for construction efforts at Dover Air Force Base, Delaware. The government will award construction projects by individual delivery orders on an as-needed basis. The contractor shall furnish all personnel, equipment, tools, materials, supervision, and other items and services necessary to design, manage, and accomplish a broad range of maintenance, repair, alteration, and/or new construction work."); at CSS 000037, ¶ 3.0 entitled "Construction Codes"

("The contractor shall comply with the latest edition of the following building codes for any construction under this contract."); Complaint ¶¶ 6 & 7.

3. Under the SABER Contract, Chugach and Jersey Shore entered into a Master Subcontract Agreement dated May 13, 2003 (the "MSA"). *See* the MSA, Appendix Exhibit 2; Complaint ¶ 10.

4. The MSA incorporated clauses in the SABER Contract such that "the Subcontractor [Jersey Shore] is obligated to Contractor [Chugach] in the same manner that Contractor is obligated to the Owner [defined as the "United States Government and Dover Air Force Base, DE"]." *See* the MSA, Appendix Exhibit 2, at CSS 000242, ¶ 1.8.

5. The MSA expressly did not obligate Jersey Shore to accept any work.    *See id.* at CSS 000243, ¶ 2:

> [T]his Agreement does not obligate Contractor to order or authorize such Work or services, nor does it obligate Subcontractor to accept Work, it being the intent that this Agreement together with any applicable Delivery Order with NTP shall jointly control and govern all Work and services ordered by Contractor and accepted by Subcontractor during the term of this Agreement and define the rights and obligations of Contractor and Subcontractor.

6. Under the MSA, Chugach issued to Jersey Shore and Jersey Shore accepted contracts for several particular construction projects at DAFB, each such contract taking the form of a Delivery Order with Notice to Proceed ("DO/NTP"). *See id.* at CSS 000243, ¶¶ 2 and 3; Complaint ¶ 10.

7. Pursuant to the MSA, Chugach issued to Jersey Shore and Jersey Shore accepted DO/NTPs for, *inter alia*, Building 401 (Delivery Order No. 5001), Building 300 (Delivery Order No. 5010), Building 302 (Delivery Order No. 5018), Building 1272 (Delivery Order No. 5019) and Building 781 (Delivery Order No. 5021). *See* the DO/NTPs, Appendix Exhibit 3, at CSS 000874-898 (DO/NTP for Building 401); at CSS 000915-919 (DO/NTP for Building 300); at CSS 000900-904 (DO/NTP

6

for Building 302); at CSS 000928-932 (DO/NTP for Building 1272); and at CSS 000943-946 (DO/NTP for Building 781); Complaint ¶ 6.

8. In and pursuant to each of these DO/NTPs, Jersey Shore agreed and committed to perform the required construction work and to do so for *fixed, lump sums certain* (subject to change orders) and *by dates certain*. The fixed price for each building was a single, aggregate, agreed price between Jersey Shore and Chugach. Neither the MSA nor any DO/NTP contained a breakdown of prices among or other separate pricing for labor, materials, overhead, profit, etc. for the Jersey Shore work *See* the DO/NTPs cited in ¶ 7 above; the SABER Contract, Appendix Exhibit 1, at CSS 000002; the MSA, Appendix Exhibit 2, at CSS 000242, ¶¶ 1.4 & 1.5; *id.* at CSS 000243, ¶¶ 2 & 3; Complaint ¶¶ 6 & 10.

9. Pricing under the SABER Contract was determined by taking published base prices, published by and referred to as "R.S.Means®," and applying certain coefficients, which the Government applied as multipliers against the R.S.Means® base to determine the prices for the individual delivery orders that the Government would issue to the successful contractor and for the delivery orders that Government did issue to Chugach for the individual projects. *See* SABER Contract, Appendix Exhibit 1, at CSS 000035 (all emphases in original):

> 1.0. In order to be considered for award, each offeror must submit four (4) coefficients, (CLINS 0001 through 0004); and identify that portion of the preceding coefficients attributed to project estimating and preparation of minimal design packages (CLIN 0005). The government uses these multipliers to determine the price of work for each task on individual delivery orders. The prices established in the R.S.Means® database bare costs (which means no markup for overhead and profit (O&P)) column, will be multiplied by the City Cost Index Weighted Average Total for **Dover, Delaware, or geographically closest city listed if Dover, Delaware should be deleted**, and the coefficient to arrive at the actual price for a unit of work. The coefficients shall be represented as "net", a "decrease from" or an "increase to" the prices listed in the R.S.Means®. An offer of "net" would be represented as "1.0".

7

An example of a decrease from the prices in R.S.Means® would be "0.98." An example of an increase above the prices listed in the R.S.Means® would be "1.10". The figure entered for CLIN 0005 shall be represented in the same manner (raw figure) as the coefficient.

*See also id.* at CSS 000045, ¶13.0 ("The R.S.Means® database shall serve as the basis for establishing the value of the work to be performed on a unit price basis."); and at CSS 000090, ¶ 1.b.(2)(a) ("The 'Bare Cost' unit price data (most recent version) provided by the R.S.Means® Company shall serve as the basis for establishing the value of the work performed on a unit price basis. Pulsar (or approved equal) shall be utilized as the software program for estimating purposes.").

10. As part of the bid process, the SABER Contract solicitation required Chugach to provide the Government with a hard copy of the R.S.Means® database and specified what Chugach had to do to develop estimates if a particular item were not included in the R.S.Means® database. *See id.* at CSS 000044, ¶ 8.0 entitled "HARD COPY of Means®":

The contractor shall provide, at no additional cost to the government, one (1) hard copy of unit price data to consist of the following R.S.Means® cost data books (one (1) complete set). Contractor shall provide the latest edition of these books to the SABER Chief and the Contract Administrator will only receive a copy of Facilities Construction Cost Data Book, within 30 days of latest release. If an item is not in the Means® Electronic Database used with the PULSAR® System, the contractor shall use the Means® Facility Cost Guide to locate the item. If the item cannot be found in the computerized version of the Facility Cost Guide, the contractor shall use the first eight (8) of the following books to develop the delivery order estimate. The contractor shall consider the item non-priced ONLY if it cannot be located in any of the first 8 guides.

11. As noted, the R.S.Means® database was the basis for establishing the *pricing* of all work to be performed, on a unit-price basis, for all delivery orders from the Government to the contractor. Per the SABER Contract, the R.S.Means® unit price database did not dictate or determine actual

8

wages that a contractor would have to pay, or would pay, workers or actual prices that a contractor would have to pay for materials, both of which could be more or less than the R.S.Means® unit prices.

12. As to the *actual* wages that a contractor or subcontractor had to pay workers, all contractors (including subcontractors) had to pay wages determined pursuant to the federal Davis-Bacon Act, 40 U.S.C. § 3141 *et seq. See* SABER Contract, Appendix Exhibit 1, at CSS 000025, ¶ 7 (note particularly subparagraph a.(2), stating: "For guidance, contractors and subcontractors may contact their nearest DOL office."); at CSS 000051, incorporating Federal Acquisition Regulation (48 C.F.R. §) 52.222-6, entitled "Davis Bacon Act"; the MSA, Appendix Exhibit 2, at CSS 000242, ¶ 1.8.

13. The Federal Acquisition Regulations and each DO/NTP required Jersey Shore to submit a "Statement and Acknowledgment (Form 1413)" to Chugach. *See* Federal Acquisition Regulation (48 C.F.R. §) 52.222-11; the SABER Contract, Appendix Exhibit 1, at CSS 000021, ¶ V.2.; the DO/NTPs, Appendix Exhibit 3, at CSS 000876 (Building 401); at CSS 000903 (Building 302); at CSS 000918 (Building 300); at CSS 000931 (Building 1272); and at CSS 000945 (Building 781).

14. Each Form 1413 that Jersey Shore submitted, for itself and for its own subcontractors, contained an express acknowledgment in Part II, Item 12, of the applicability of the Davis-Bacon Act. *See* Forms 1413, Appendix Exhibit 4, at CSS 000757 through CSS 000802; Federal Acquisition Regulation (48 C.F.R. §) 52.222-11.

15. There is no provision in the SABER Contract, the MSA or any DO/NTP that gave Jersey Shore the rights or privileges of the United States Government under the SABER Contract or

otherwise bound Chugach to render its performance under the SABER Contract to or for the benefit of Jersey Shore.

16. Jersey Shore's Complaint in large part is based on Chugach's alleged mistaken or incorrect wage rate determinations in establishing prices for work to be performed under the SABER Contract.  *See* Complaint ¶¶ 11-13 & 16.

17. Jersey Shore also alleges that Chugach failed to process invoices in a timely fashion and failed to issue and process change orders.  *See* Complaint ¶ 16.  Per Jersey Shore's Initial Disclosures, Appendix Exhibit 5, Jersey Shore claims and seeks damages only as to (i) the alleged mistaken use of R.S.Means®; (ii) payments allegedly due to Jersey Shore's subcontractors and suppliers; (iii) an alleged unpaid balance due or work performed; (iv) materials allegedly purchased; and (v) 50% of the remaining contract value of services.  Jersey Shore makes no claim for damages arising out of Chugach's allegedly failing to process invoices in a timely fashion or failing to issue and process change orders.

## ARGUMENT

To the extent that the Complaint alleges and seeks recovery (i) based on Chugach's alleged mistaken or incorrect wage rates in establishing prices for work to be performed under the SABER Contract or (ii) arising out of or related to Chugach's alleged untimely processing of invoices and allegedly failing to issue change orders, the Complaint must be dismissed because it fails to state a claim on which relief can be granted or, in the alternative, Chugach is entitled to judgment as a matter of law on the undisputed facts.

**I. The Complaint Fails to State a Claim on Which Relief Can Be Granted Because There Is No Set of Facts That Gives Rise to a Contractual, Quasi-Contractual or Other Obligation of Chugach to Jersey Shore with Respect to the Pricing of the Government's Award of the SABER Contract to Chugach**

Simply put, the Complaint fails to allege, and there is no set of facts that Jersey Shore could prove based on the Complaint to show, that Chugach had any contractual, quasi-contractual or other obligation to Jersey Shore arising out of the pricing determination in the Government's award of the SABER Contract or with respect to Jersey's Shore autonomous agreement to fixed, lump-sum prices for individual DO/NTPs, for two reasons:

**First**, there is no provision, express or implied, in any agreement between Chugach and Jersey Shore, or to which Jersey Shore was an intended beneficiary, so obligating Chugach as a matter of contract law.

**Second**, federal law obligated Jersey Shore (and all other government contractors and subcontractors) to pay Davis-Bacon wages regardless of the basis on which Jersey Shore and/or Chugach priced the work.

**Third**, Jersey Shore agreed to do the work under each DO/NTP for a fixed, lump-sum price, without regard to the actual costs for labor, or for actual costs of materials, overhead or any other particular item.

**A. There Is No Provision in Any Agreement Between Chugach and Jersey Shore, or to Which Jersey Shore Was an Intended Beneficiary, Obligating Chugach to Jersey Shore with Respect to Chugach's Pricing Determinations**

To begin, certainly there is nothing explicit in any agreement obligating Chugach to Jersey Shore in the manner that the Complaint suggests and on which the Complaint depends. So the best Jersey Shore could hope for is some implied contractual obligation.

11

But no term singularly, and no terms when read together, of any of the three agreements, the SABER Contract, the MSA or the DO/NTPs, give rise to some amorphous obligation that Chugach owed to Jersey Shore arising out of the Government's pricing principles, Chugach's application of the R.S.Means® database or the Chugach/Government pricing determinations.  Nor could there be, in light of the fact that federal law and the SABER Contract provide, and all parties *knew* (as evidenced by, *inter alia*, the Forms 1413, CSS 000757 through CSS 000802), that the wages that contractors had to pay were *not* the R.S.Means® figures but rather were the higher wages pursuant to and compelled by the federal Davis-Bacon Act.

Also, the MSA and the DO/NTPs dispel any notion of a contractual obligation arising out of the R.S.Means® calculations running from Chugach to Jersey Shore.  First, the MSA and the DO/NTPs make no mention of R.S.Means® or of Chugach's pricing to the Government.  Second, the MSA and the DO/NTPs do not link Jersey Shore's lump-sum-price agreements to a contractual agreement that Jersey Shore would have to pay individuals only the wage rates set forth in R.S.Means®.  Third, the MSA and the DO/NTPs do not, as they cannot, annul the Davis-Bacon Act.  Fourth, to the extent that the MSA and the DO/NTPs create a contractual obligation relating to the SABER Contract itself, that obligation runs in the *opposite* direction, from Jersey Shore to Chugach, not from Chugach to Jersey Shore.  *See* the MSA, Exhibit 2, at CSS 000242, ¶ 1.8: "[T]he Subcontractor is obligated to Contractor in the same manner that Contractor is obligated to the Owner."

Even were Jersey Shore to claim some contractual stature equivalent to the Government, which Jersey Shore does not and cannot, that stature would be unavailing here.  The Complaint does not allege, nor could the Complaint allege or Jersey Shore prove, that Chugach breached any

12

obligation to the Government if Chugach *underpriced* the SABER Contract work, if Chugach charged the Government *less* than the maximum Chugach could have charged. It may be different, obviously, if Chugach overcharged the Government in violation of law; but there is no principle of law or logic that condemns Chugach for charging the Government less than Chugach might have charged the Government. The notion that a government contractor has a legal obligation – let alone a legal obligation to future subcontractors – to charge as much as or more than the contractor may charge is absurd.[2]

Furthermore, as the SABER Contract indicates, the Government independently must agree, as the Government did agree, on the formulae, propriety and amounts of the pricing. In reality, therefore, there cannot be an error on Chugach's part.

Finally, the contract prices of which Jersey Shore complains in the DO/NTPs were discrete lump sums, not based on particular criteria such as "time and materials." The former simply are not the latter. *See, e.g., Mayor and Council of Wilmington v. Recony Sales and Engineering Corp.*, 55 Del. 129, 131, 185 A.2d 68, 69 (Del. 1962); *Vepco v. Div. of Facilities Management*, 1982 WL 116988 *3 (Del. Ch. 1982). *In the case of these lump-sum DO/NTPs, with their all-inclusive prices, Jersey Shore committed to do the work for the set price regardless of the particular costs – higher or lower – of an individual task, worker or item.*

Jersey Shore's last straw (assuming for argument purposes an obligation enforceable by the Government against Chugach to price higher and/or to be paid more than the R.S.Means® unit prices) would be for Jersey Shore to argue that it is the intended third-party beneficiary of the

---

[2] Chugach does not concede any error, but rather proceeds on the ordinary Fed. R. Civ. P. 12(b)(6) basis that accepts all well pleaded facts and reasonably favorable inferences flowing therefrom as true for purposes of a Rule 12(b)(6) motion.

13

SABER Contract.  To qualify as a third-party beneficiary of a contract under Delaware law, Jersey Shore must show that (i) the contracting parties intended that the third-party beneficiary benefit from the contract; (ii) the benefit was intended as a gift or in satisfaction of a pre-existing obligation to that person; and (iii) the intent to benefit the third party was a material part of Chugach's and the Government's purpose in entering into the contract.  If it was not Chugach's intention to confer direct benefits upon Jersey Shore, but rather Jersey Shore as a third party happens to benefit from performance either coincidentally or indirectly, then Jersey Shore will have no enforceable rights – even assuming the existence of such rights – under the contract.  *See MBIA Ins. Corp. v. Royal Indemnity Co.*, 294 F. Supp.2d 606, 611-12 (D. Del. 2003).

On its face, a third-party-beneficiary argument has no merit.  Only the Government was the beneficiary of the SABER Contract.  Chugach was undertaking the construction projects at DAFB for the Air Force, not for the benefit of unknown others who might supply labor or materials to the projects.

Also, Jersey Shore could not claim to be a beneficiary of Chugach's performance under the SABER Contract because the SABER Contract (i) did not require subcontractors and (ii) preceded any engagement of Jersey Shore as a subcontractor.  And even were subcontractors in place as of the Government's award of the SABER Contract, that would not confer status as third-party beneficiary of Chugach's promises to the Government.   Under the Federal Acquisition Regulations, the subcontractors themselves owe duties *to* the Government, not the reverse.  *See, e.g.,* 48 C.F.R. § 52.222-11.  Generally speaking, in fact, subcontractors cannot even stand in the shoes of the primary contractor to enforce a right *against* the Government.  *See, e.g., Universal Bonding Ins. Co. v. Gitens*

14

*and Sprinkle Enterprises, Inc.*, 960 F.2d 366, 375-76 (3d Cir. 1992); *First Hartford Corp. Pension Plan & Trust v. U.S.*, 194 F.3d 1279, 1289 (Fed. Cir. 1999).

In conclusion, therefore, in no sense can it be said, as Delaware law requires, that there is a contractual obligation regarding Chugach's and the Government's pricing determinations that is "'reasonably definite and certain in its terms'" so as to entitle Jersey Shore to relief. *Haft v. Dart Group Corp.*, 877 F. Supp. 896, 906 (D. Del. 1995) (citation omitted).

### B. The Federal Davis-Bacon Act, Well Publicized and Well Known to Jersey Shore, Required Jersey Shore to Pay Federally Prescribed Wage Rates Regardless of Jersey Shore's, Chugach's or the Government's Basis for Pricing Any Work

Jersey Shore's Complaint alleging that Chugach miscalculated wage rates and that the miscalculation was a breach of Chugach's contract with Jersey Shore ultimately must fail, even were there such a contractual obligation, because such calculations are irrelevant as a matter of law to Jersey Shore's obligations to its workers. Regardless of what Chugach did – even if Chugach used figures of "zero" in all the wage-rate calculations in its submission to the Government – the Davis-Bacon Act required Jersey Shore to pay Davis-Bacon wages. Jersey Shore knew that going in, and knew that when it agreed to fixed-price DO/NTPs. That Jersey Shore itself may have made serious errors in wage estimations in bidding on and agreeing to the fixed-price DAFB jobs is Jersey Shore's responsibility. Chugach did not ensure Jersey Shore's arithmetic.[3]

---

[3] Furthermore, Jersey Shore's theory of the case would require that if Chugach overpriced any wages or materials, Jersey Shore would owe Chugach a refund of amounts paid for completed work. This logical extension of the Complaint to its illogical conclusion contributes to its underlying economic implausibility, discussed further in Point II below.

**II. In the Alternative, the Complaint Must be Dismissed Because on the Undisputed Facts and as a Matter of Law, Chugach Had No Contractual, Quasi-Contractual or Other Obligation to Jersey Shore with Respect to the Pricing of the Government's Award of the SABER Contract to Chugach**

There is no genuine dispute of material facts, as set forth above under Statement of Facts. In particular, the SABER Contract, the MSA and the DO/NTPs are irrefutable. For the reasons set forth in Point I above, Chugach is entitled to judgment as a matter of law as to any and all claims arising out of or related to any alleged incorrect or mistaken use of the R.S.Means® unit-price database. The R.S.Means® database was simply the foundation for Chugach's bid and for Chugach's and the Government's agreement on the pricing of the work to be done under the SABER Contract. The R.S.Means® database did not determine the actual wages that Chugach, or any subcontractor, had to pay.

Rather, under well publicized and well known law, Davis-Bacon Act wage rates, ascertained and published (including recent, particular Wage Rate Decisions made part of the SABER Contract itself), dictated how much Chugach, and any subcontractor, had to pay their workers. Jersey Shore, like everyone else working this job, knew that. But even were Jersey Shore to claim surprise with respect to Davis-Bacon (not a credible claim based on the contract documents, the Forms 1413 and Davis-Bacon's integration into government contracting), the facts are that (i) Davis-Bacon is long-standing law, (ii) Davis-Bacon is explicit in the Federal Acquisition Regulations and the SABER Contract and (iii) Jersey Shore acknowledged and agreed to Davis-Bacon in the federal Forms 1413. So any argument that Jersey Shore was uninitiated in Davis-Bacon must fail.

Jersey Shore's claim is, moreover, economically (as well as legally) implausible. Chugach was the party obligated to the Government for all construction under the SABER Contract. If

16

Chugach received and accepted the contract award on the basis of its own underestimated or incorrectly transcribed costs from the R.S.Means® database, Chugach harmed itself more than anyone else.  It makes no sense that Chugach would do that.

Additionally, the R.S.Means® database is publicly available and was as available to Jersey Shore as it was to Chugach and the Government.  *See* www.rsmeans.com.  At the very least, Jersey Shore itself could have assayed (if it in fact did not) the R.S.Means® database and *determined, as it did, its own acceptable prices for the DO/NTPs*.  Thus again, given that both Jersey Shore and the Government knew and had ready access to the R.S.Means® database, the notion that Chugach underpriced all the work under the SABER Contract unbeknownst to everyone is implausible.  *See also* note 3 above.  Without plausibility, Jersey Shore's claim must fail.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 583 n.6, 591 n.15, 595-96 (1986).

> **III. To the Extent That the Complaint Seeks Relief Based on or Arising Out of Allegations Relating to Chugach's Allegedly Failing to Process Invoices for Payment in a Timely Fashion and Failing to Request or Issue Change Orders, the Complaint Must Be Dismissed, or in the Alternative Chugach Is Entitled to Summary Judgment, as, per Jersey Shore's Initial Disclosures, Jersey Shore Suffered and Seeks Recovery of No Damages Arising Out of Such Allegations**

In Plaintiff Jersey Shore's Rule 26(a)(1) Initial Disclosures (Apr. 22, 2005), Appendix Exhibit 5, Jersey Shore listed five items of damages.  *See* Exhibit 5 at 8.  Item 1 sets forth damages allegedly resulting from Chugach's mistaken use of R.S.Means®.  Item 2 sets forth damages for payments due to Jersey Shore's subcontractors and suppliers (whom Chugach paid directly because Jersey Shore did not).  Item 3 sets forth damages for an alleged balance due for an unpaid percentage of work completed.  Item 4 sets forth alleged damages for materials purchased for use with Jersey Shore's DAFB work.  And item 5 sets forth damages of 50% of the remaining contract value of

services that Jersey Shore allegedly was to provide. But *none* of these damages relates to or arises out of Chugach's allegedly "failing to process invoices for payment in a timely fashion and failing to request or issue change orders." Complaint ¶ 16. Accordingly, by Jersey Shore's admission there being no damages caused or sought in connection with these allegations, Chugach is entitled to dismissal of these claims under Rule 12(b)(6) or Rule 56. "'It is elementary that the mere breach of an agreement which causes no loss to plaintiff will not sustain a suit by him for damages ....'" *Pasquel v. Owen*, 186 F.2d 263, 271 (8th Cir. 1950) (citation omitted).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants Chugach Support Services, Inc. and Safeco Insurance Company respectfully pray that the Court dismiss the Complaint, or in the alternative grant partial summary judgment on the Complaint, dismissing with prejudice Plaintiff's claims arising out of and with respect to Chugach's (i) alleged mistakes in calculating, and incorrect calculations of, wage rates and (ii) allegedly failing to process invoices for payment in a timely fashion and failing to request or issue change orders.


Dated: May 3, 2005
        Wilmington, Delaware

BIRCH, HORTON, BITTNER AND CHEROT


__/s/ Harvey A. Levin_____
Harvey A. Levin
1155 Connecticut Avenue, N.W., Suite 1200
Washington, DC 20036
Phone (202) 659-5800
Fax (202) 659-1027
Email: hlevin@dc.bhb.com

        and

THE LYONS LAW FIRM

__/s/ Edmund Daniel Lyons_____
Edmund Daniel Lyons (No. 0881)
1526 Gilpin Avenue
P.O. Box 579
Wilmington, DE 19806
Phone (302) 777-5698
Fax (302) 777-5051
Email: elyons@lyonslaw.com

Counsel for Chugach Support Services, Inc. and
Safeco Insurance Company of America

19

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Motion and accompanying Brief were served by first class mail, postage prepaid this 3d day of May 2005 on:

> James D. Heisman, Esquire
> M. Edward Danberg, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899

> __/s/ Harvey A. Levin_____

@PFDesktop\::ODMA/WORLDOX/G:/505986/4/HAL8958.WPD

20