APPENDIX TO
BRIEF OF DEFENDANTS
CHUGACH SUPPORT SERVICES, INC.
AND SAFECO INSURANCE COMPANY OF AMERICA
IN SUPPORT OF MOTION TO DISMISS IN PART,
OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT


EXHIBIT 2: THE MASTER SUBCONTRACT AGREEMENT



COPY

CHUGACH ALASKA CORPORATION
LEGAL DEPARTMENT
Date Received 4/8/04
Routed Thru ___
Calendared ___
File No ___

# MASTER SUBCONTRACT AGREEMENT

by and between

Chugach Support Services, AS CONTRACTOR

and

Jersey Shore Automation, AS SUBCONTRACTOR

for services to be performed at

Dover AIR FORCE BASE, DE

Master Subcontract Agreement Number: 70-JSA-005

Dated: May 13, 2003

1005-419
Doc. No. ___
Logged ___

CSS 000235

# TABLE OF CONTENTS

## MASTER SUBCONTRACT AGREEMENT
### by and between
### Chugach Support Services, as CONTRACTOR
### and
### Jersey Shore Automation, as SUBCONTRACTOR

Master Subcontract Agreement Number: 70-JSA-005.

|         |                                  | PAGE   |
|---------|----------------------------------|--------|
| PART I  | REPRESENTATIONS & CERTIFICATIONS | 1 - 5  |
| PART II | TERMS & CONDITIONS               | 6 - 17 |
| PART III| CONTRACT CLAUSES                 |        |
| PART IV | SPECIAL CONTRACT REQUIREMENTS    |        |
| PART V  | TECHNICAL SPECIFICATIONS         |        |

CSS 000236

# MASTER SUBCONTRACT AGREEMENT
## by and between
## Chugach Support Services as CONTRACTOR
## and
## Jersey Shore Automation, as SUBCONTRACTOR

Master Subcontract Agreement Number: 70-JSA-005.

This Master Subcontractor Agreement, by and between Chugach Support Services, an Alaska Corporation (hereinafter referred to as Contractor) whose address is 560 East 34th Avenue, Suite 300, Anchorage, Alaska 99503 and _JERSEY SHORE AUTOMATION, INC_ (X) Corporation, ( ) Proprietorship, ( ) Partnership, under the laws of the State of _N.J._ whose address is _1500 MEETING HOUSE RD., SEA GIRT, NJ 08750_. Tax Payer Identification Number (TIN): _22-3324163_ (hereinafter referred to as Subcontractor) is entered into as of this _19_ day of _MAY_, 2003

The Master Subcontractor Agreement (hereinafter referred to as Agreement) defines all of the terms and conditions of the Agreement between the Contractor and Subcontractor and consists of four parts. Part I, contains the representations and certifications to be acknowledged by Subcontractor as required by the Government (and by the Contractor) in order to perform work at a government installation. Part II outlines the terms and conditions of the Agreement, Parts I and II must be signed by both parties. Part III includes the Contract Clauses which are incorporated in the contract for the Simplified Acquisition Base Engineering Requirements Number F07603-03-D-0002, by and between the United States of America, as Owner, and Chugach Support Services, as Contractor, awarded on February 21, 2003, hereinafter referred to as Prime Contract. These contract clauses listed in Part III are conditions under this Agreement and are incorporated herein. Part IV lists the special contract requirements and Part V lists Technical Specifications hereby incorporated and made a part hereto.

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

## PART I

### SUBCONTRACTOR REPRESENTATIONS & CERTIFICATIONS

### STATUS OF BUSINESS AS DETERMINED BY SMALL BUSINESS ADMINISTRATION

Subcontractor represents and certifies that (X) it is, ( ) is not a Small Business Concern and (X) all, ( ) not all supplies to be furnished will be manufactured or produced by a small business concern in the United States, its possessions or Puerto Rico.

Subcontractor represents and certifies that ( ) it is, (X) is not a Small Disadvantaged Business.

Subcontractor represents and certifies that ( ) it is, (X) is not a Woman-Owned Business.

Subcontractor represents and certifies that ( ) it is, (X) is not a HUB Zone Contractor.

### EQUAL EMPLOYMENT OPPORTUNITY COMPLIANCE CERTIFICATIONS

### AFFIRMATIVE ACTION FEDERAL CONTRACTOR.

(Executive Order 11246 as amended by Executive Order 11375)

NOTE: Applicable to contracts of $50,000 or more and Contractors with 50 or more employees.

The undersigned certifies that it has developed and is currently maintaining a written Affirmative Action Program at each of its establishments pursuant to all the terms and regulations promulgated under Executive Order 11246, as amended or, if such a program has not been developed, that such a program or programs will be developed within 120 days from the commencement of a contract, subcontract, or purchase order with Contractor.

Subcontractor represents and certifies that it (X) has, ( ) has not participated in a previous contract or subcontract subject to either the Equal Opportunity Clause of this solicitation, the clause originally contained in Section 310 of Executive Order No. 11114.

CSS 000238

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

## COMPLIANCE REPORTS

(Executive Order 11246 as amended by Executive Order 11375)

NOTE: Applicable to contracts of $50,000 or more and contractors with 50 or more employees.

The undersigned certifies that it will file with the appropriate federal agency on or before March 31, of each year, or within such other period permitted or required by Executive Order 11246, as amended, complete and accurate reports on Standard Form 100 (EEO-1).

Subcontractor represents and certifies that it (X) has; ( ) has not filed all required compliance reports it has previously been required to file.

## NON-SEGREGATED FACILITIES

(Executive Order 11246 as amended by Executive Order 11375)

NOTE: Applicable to contracts exceeding $10,000

The undersigned certifies that it does not maintain or provide for its employees any segregated facility at any of its establishments, and that it does not permit its employees to perform their services at any location, under its control, where segregated facilities are maintained.

A breach of this certification is a violation of the Equal Opportunity Clause in this Agreement. As used in this certification, the term "segregated facilities" means any waiting rooms, work areas, rest rooms, and wash rooms, restaurant, and other eating areas, time clocks, locker rooms, and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation and housing facilities provided for employees which are segregated on the basis of race, color, or national origin, because of habit, local custom or otherwise. It further agrees that (except where it has obtained identical certifications from proposed subcontractors for specific time periods) it will obtain identical certifications from proposed subcontractors prior to the award of subcontracts exceeding $10,000 which are not exempt from the provisions of the Equal Opportunity Clause; that it will forward the following notice to such proposed subcontractors:

3

CSS 000239

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

## NOTICE TO PROSPECTIVE SUBCONTRACTORS
## OF
## REQUIREMENT FOR CERTIFICATION OF NON-SEGREGATED FACILITIES

A Certification of Non-segregated Facilities must be submitted prior to the award of a subcontract exceeding $10,000, which is not exempt from the provisions to the Equal Opportunity Clause. The certification may be submitted either for each subcontract or for all subcontracts during a specific period (i.e., quarterly, semiannually, or annually).

## GOVERNMENT CONTRACT CLAUSES INCORPORATED BY REFERENCE IN COVERED SUBCONTRACT OF Chugach Support Services

EQUAL OPPORTUNITY CLAUSE, Federal Acquisition Regulation 52.222-26 (applicable to contract and subcontracts with an aggregate value over $10,000)

AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION, Federal Acquisition Regulation 52.222-27 (applicable to contracts and subcontracts over $10,000)

AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS, Federal Acquisition Regulation 52.222-35 (applicable to contracts and subcontracts 10,000 or more)

AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS, Federal Acquisition Regulation 52.222-36 (applicable to contracts and subcontracts 2,500 or more)

EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA, Federal Acquisition Regulation 52.222-37 (applicable to contracts and subcontracts 10,000 or more)

## MISCELLANEOUS CERTIFICATIONS

Subcontractor represents and certifies that any facility to be used in the performance of this proposed contract is ( ), is not (X) listed on the Environmental Protection Agency list of Violating Facilities.

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

Subcontractor represents that at the time of signing this Master Subcontract Agreement the Subcontractor or its principals is ( ) is not (X) debarred, suspended, or proposed for debarment by the Federal Government (See FAR 9.404 for information on the List of Parties excluded from Federal Procurement and Nonprocurement Programs). If the Subcontractor or its principals is debarred, suspended or proposed for debarment by the Federal Government the Subcontractor shall disclose this information to the Contractor IAW FAR 52.209-6, "Protecting the Government's Interest when Subcontracting With Contractors Debarred Suspended, or Proposed for Debarment".

By entering into this Agreement, Subcontractor certifies that neither it nor any person or firm who has an interest in the Subcontractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of section 3a of the Davis-Bacon Act or 29 CFR 5.12(a)1.

NOTE: The penalty for making false statements is prescribed in 18.U.S.C.1001.

CONTRACTOR:

Chugach Support Services

By: _____

Title: P.M.

Date: 5-20-03

SUBCONTRACTOR:

Jersey Shore Automation

By: DARYL J. MEEHAN

Title: VICE PRESIDENT

Date: 05/19/03

5

CSS 000241

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

## PART II

### TERMS AND CONDITIONS

In consideration of the mutual promises herein contained Contractor and Subcontractor agree as follows:

1. **DEFINITIONS**

   In this Master Subcontractor Agreement, the following terms have the following meanings:

   1.1  Master Subcontractor Agreement hereinafter referred to as Agreement includes this agreement, the terms and conditions of the agreement and all other parts, exhibits, schedules and items incorporated by reference which together comprises the Master Subcontractor Agreement documents.

   1.2  Chugach Support Services, hereinafter referred to as Contractor is the prime contractor or general contractor acting on its own behalf.

   1.3  Subcontractor means the person, entity or company which entered into this Agreement with Contractor.

   1.4  Work means all minor construction, alterations and repair work to be performed by the Subcontractor under this Agreement. The specific items of work will be identified by any combination or all of the following plans, sketches, written special specifications, general specifications provided with the Delivery Order with Notice to Process (NTP).

   1.5  Delivery Order with NTP means the form which shall be the authorization and definition of Work to be performed.

   1.6  Project shall mean the Construction/Repair Requirements of base wide construction efforts at Dover Air Force Base, DE. Each Delivery Order with NTP will specify the exact site location.

   1.7  Owner shall mean the United States Government and Dover Air Force Base, DE.

   1.8  Prime Contract shall mean those agreements between Owner and Contractor. By way of this Agreement, clauses contained in the Prime Contract are incorporated into this Master Agreement and the Subcontractor is obligated to Contractor in the same manner that Contractor is obligated to the Owner. The Federal Acquisition Regulation (FAR) and Supplemental (e.g. DFAR) contract clauses incorporated into this agreement as Part III, by

6

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

reference, are available in full text at the contractor's office for review. The special contract requirements incorporated herein as Part IV are provided in full text with this Master Subcontract Agreement.

    1.9   Default shall mean failure of Subcontractor to perform Work in accordance with the terms of the Agreement. Default not only includes areas specifically described as a default in this Agreement but also includes failure of Subcontractor to perform any requirement of the Agreement.

2.    **AGREEMENT**

This Agreement covers and includes all Work and services performed and to be performed by Subcontractor under a written Delivery Order with NTP given by Contractor to Subcontractor from time to time during the term of this Agreement provided, however, that this Agreement does not obligate Contractor to order or authorize such Work or services, nor does it obligate the Subcontractor to accept Work, it being the intent that this Agreement together with any applicable Delivery Order with NTP shall jointly control and govern all Work and services ordered by Contractor and accepted by Subcontractor during the term of this Agreement and define the rights and obligations of Contractor and the Subcontractor.

Subcontractor is bound by the terms and conditions of this Master Subcontract Agreement to perform all Work ordered and accepted in accordance with the terms and conditions of this Agreement. Work is considered accepted by the Subcontractor upon acknowledgment by the Subcontractor of the Delivery Order with NTP.

3.    SITE LOCATION

The site location for performance of Work under this Agreement will be:

DOVER AIR FORCE BASE, DE

The exact location of the Work will be contained on the Delivery Order with NTP.

4.    PAYMENTS AND INVOICING

    4.1   Contractor promises to pay Subcontractor for all Work performed under the Agreement, provided that all Work is performed in accordance with the terms and conditions of this Agreement and the Delivery Order with NTP pertaining to the Work for which payment is to be made and provided that Subcontractor is not in default under any provision of this Agreement Work must be completed in accordance with the specifications issued in connection with the Delivery Order and all other Federal, State, and Local laws as they may apply to construction performed at Dover Air Force Base, DE.

7

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

4.2    Payment for Subcontractors Work will be made pursuant to this Agreement when and only to the extent Contractor has been paid for Subcontractor's work by Owner. Contractor shall pay Subcontractor for satisfactory performance under its subcontract not later than seven (7) days after Contractor receives payment from Owner for Subcontractors work.

An Interest Penalty shall be paid by Contractor to the Subcontractor for each payment not made in accordance with this payment clause.

For the period beginning on the day after the required payment date and ending on the date which payment of the amount due is made, and computed at the rate of interest established by the Secretary of the Treasury and published in the Federal Register, for interest payments under Section 12 of the Contract Disputes of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligations to pay an interest penalty.

The Subcontractor shall include a payment and an interest penalty clause conforming to the standards set forth herein in its subcontracts for property or services (including a material supplier), and require each of its subcontractors to include such a payment clause in their subcontracts with lower-tier subcontractors and suppliers.

4.3    Invoice Format and Documentation. Payment to Subcontractor shall only be made against a properly prepared, documented and submitted invoice as all as the Progress Billing document detailed in Exhibit A and additional detail and documentation as Contractor and Owner may from time to time reasonably require in writing.

4.4    If the Contractor finds that satisfactory progress was achieved during any period for which a progress payment is to be made, the Contractor shall authorize payment of the progress billing to be made in full. However, if satisfactory progress has not been made, the Contractor may retain a maximum of 10 percent of the amount of the payment until satisfactory progress is achieved. When the work is substantially complete, the Contractor may retain from previously withheld funds and future progress payments that amount the Contractor considers adequate for protection of the Contractor and Owner and shall release to the Subcontractor all the remaining withheld funds.

4.5    Invoices shall be submitted on or before the 25th of each month and cover materials furnished and labor performed during that month in the proper performance of the Work. Only the materials and services in the quantity and nature specified in the Delivery Order with NTP or in Change orders will qualify for payment.

4.6    Except for final payment, payment to Subcontractor is specifically agreed not to constitute or imply acceptance by Contractor or Owner of any portion of the Work.

8

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

4.7  Subcontractor shall submit an original invoice and a CMSI Progress Billing for Subcontractor (Exhibit A) directly to Chugach Support Services, P.O. Box 02049, DAFB, DE. 19902 or hand deliver to the Chugach Support Services office at Building 447, DAFB, DE. 19902. All invoices shall be certified by the subcontractor as being true, complete, accurate and due for payment; this signature shall be notarized by a commissioned Notary Public.

4.8  Payment for Delivery Orders requiring up to 30-day performance time will be in one final payment. For delivery orders with a performance time over 30 days, the Subcontractor will be permitted to submit monthly invoices for progress payments.

5.  **JOBSITE SUPERINTENDENCE**

In the event Subcontractor is to perform Work under the Agreement, it shall designate a site representative to Contractor prior to commencement of that Work. The site representative, or in his/her temporary absence, his/her designated assistant, shall be "on call" at all hours from commencement of Work to completion. He/She shall be authorized to act on behalf of Subcontractor and any instructions given to the site representative shall be considered as having been given to Subcontractor.

Contractor shall be represented at the jobsite by the Construction Superintendent or his designee. These persons are authorized by the Site Manager to act on behalf of Contractor to effect timely and quality completion of the project for the Owner. All questions concerning the performance of the Delivery Order with NTP shall be addressed to the Construction Superintendent or the Site Manager.

6.  **WARRANTY OF WORK**

Subcontractor warrants to Contractor that materials and equipment furnished under each individual Delivery Order with NTP will be of good quality and new, unless otherwise required or explicitly permitted by the Delivery Order with NTP; that the work will be free from defects not inherent in the quality required or permitted; and that the Work will conform with the requirements of the Delivery Order with NTP. If required by Contractor, Subcontractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment. In addition to other warranties set forth in the Prime Contract, Subcontractor agrees to repair or replace, at its expense, workmanship, materials, or other portions of the Work that do not conform to this warranty, within the first year following acceptance of the Contractor's work for Owner. No payment, in whole or in part, shall be deemed a waiver of any defect in materials or workmanship or a release of Subcontractor's obligations under this Section.

7.  **TAXES, FEES AND LICENSE**

Unless otherwise provided in the Prime Contract or Delivery Order with NTP, Subcontractor shall pay sales, consumer, use and other similar taxes, and shall secure and

9

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

pay for any building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work.

8. **TERMINATION**

    8.1  This Agreement shall automatically terminate simultaneously with the termination of the Prime Contract between Contractor and Owner.

    8.2  If Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Schedule of Work or it fails to make prompt payment for its workers, sub-subcontractors or suppliers, disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction or otherwise is guilty of a material breach of a provision of this Agreement, and fails within three (3) working days after receipt of written notice to commence and continue satisfactory correction of such default with diligence and promptness, the Contractor, without prejudice to any rights or remedies, shall have the right to any or all of the following remedies:

    (a) Supply such number of workers and quantity of materials, equipment and other facilities as the Contractor deems necessary for the completion of the Work, or any part thereof which Subcontractor has failed to complete or perform after the aforesaid notice, and charge the cost thereof to Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and attorney's fees;

    (b) Contract with one or more additional contractors to perform such part of the Work as Contractor shall determine will provide the most expeditious completion of the total Work and charge the cost thereof to Subcontractor;

    (c) Withhold payment of any monies due Subcontractor pending corrective action to the extent required by and to the satisfaction of Contractor and Owner; and

    (d) In the event of any emergency affecting the safety of persons or property, Contractor may proceed as above without notice.

    8.3  **Termination by Contractor.**  If Subcontractor fails to commence and satisfactorily continue correction of a default within three (3) working days after receipt by Subcontractor of the notice issued under paragraph 8.2, the Contractor may, issue a second written notice, by certified mail, commence and continue correction of a default within seven (7) working days after receipt by Subcontractor of the notice, Contractor may terminate this Agreement and use any materials, implements, equipment, appliances or tools furnished by or belonging to Subcontractor to complete the Work. Contractor also may furnish those materials, equipment and/or employ such workers or subcontractors as Contractor deems necessary to maintain the orderly progress of the Work.

    All of the costs incurred by Contractor in so performing the Work, including

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

reasonable overhead, profit and attorneys' fees, shall be deducted from any monies due or to become due Subcontractor. Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the sum otherwise due Subcontractor hereunder.

8.4   **Termination by Owner.** Should Owner terminate the Prime Contract or any part of the Prime Contract which includes the Work, Contractor shall so notify Subcontractor in writing and upon receipt of said notice, this Agreement shall also be terminated and Subcontractor shall immediately stop the Work.

In the event of such Owner termination, Contractor's liability to Subcontractor is limited to the extent of Contractor's recovery on Subcontractor's behalf under the Prime Contract.

Contractor agrees to cooperate with Subcontractor, at Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of Owner's termination and to permit Subcontractor to prosecute said claim, in the name of Contractor, for the use and benefit of Subcontractor, or assign the claim to Subcontractor.

8.5   **Termination for Convenience.** Contractor may order Subcontractor in writing to suspend, delay, or interrupt all or any part of the Work for such period of time as may be determined to be appropriate for the convenience of Contractor.

Subcontractor shall notify Contractor in writing within ten (10) working days after receipt of Contractor's order of the effect of such order upon the Work, and the compensation due Subcontractor or the time for performance of the Work shall be adjusted by Change Order for any increase in the time or cost of performance of the Work caused by such suspension, delay, or interruption.

No claim under this paragraph shall be allowed for any costs incurred more than ten (10) working days prior to Subcontractor's notice to Contractor.

Neither the compensation due Subcontractor nor the time for performance of the Work shall be adjusted under this paragraph for any suspension, delay or interruption to the extent that performance would have been so suspended, delayed, or interrupted by the fault or negligence of Subcontractor.

9.   CHANGES

Contractor may, at any time by written order ("Change Order"), without in any way invalidating this Agreement, make changes, revisions, additions, or deletions (the "Changes") in the work which are required by changes ordered by Owner under the Delivery Order or Prime Contract. Contractor's determination (i) that a change ordered by Owner is a change within the general scope of this Agreement, and (ii) that such changes require Subcontractor

11

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

to make a Change of the Work, shall be conclusive as to Subcontractor's obligation to perform such Change. If any Change causes an increase or decrease in the cost of, or time required for their performance of any part of the Work, whether changed or not, Subcontractor's compensation, the period of performance, or both, shall be adjusted in accordance with changes in the Delivery Order or Prime Contract, and the Delivery Order with NTP shall be modified in writing accordingly. The Subcontractor shall proceed with the performance of the Work as Changed immediately upon its receipt or in accordance with the terms of the Change Order. Any claim for an adjustment to Subcontractor's compensation or time for the performance of the Work not covered by a Change Order or other written modification shall be made in writing to Contractor in accordance with paragraph 8.

10. **CLAIMS**

In the event Subcontractor claims additional compensation or a further extension for the performance of the Work, as a result of a Change Order pursuant to Paragraph 7, it shall submit its claim in writing to Contractor not later than twenty (20) days after issuance of the Change Order or other act or occurrence giving rise to the claim. Any claim not submitted within such time period shall be barred. Contractor shall submit such written information with its claim as shall reasonably substantiate its claim or as Contractor or Owner shall reasonable request. Contractor will notify Subcontractor in writing of Contractor's decision on the claim within 30 days after receipt, including whether, in accordance with the applicable provisions of the Prime Contract, Contractor will pursue the claim on Subcontractor's behalf.

11. **NOTICE OF ASSIGNMENT**

11.1 Assignment or reassignment of any claims or rights to unpaid amounts under this Agreement is prohibited without prior notification to the Contractor.

11.2 No assignment or reassignment shall impose any obligation on the Contractor until a copy of the assignment has been filed with and its receipt acknowledged by the Contractor.

11.3. Payment to Assignee of sums owed to the Assignor will be subject to all the terms and conditions of this Agreement. Assignee's rights to payment of unpaid amounts or other claims against the Contractor are synonymous with the Contractor's duties to the Assignor/Subcontractor. Any such rights shall be subject to the same conditions imposed on the Subcontractor by the Agreement, including but not limited to the Contractor's rights to withhold, suspend, or reduce progress payments under the Payments Clause (II-3), the Contractor's rights to withhold or set off payment in satisfaction of laborers and mechanics under the Miller Act, and the Contractor's right to set off payment for the repair of defects under the Warranty Clause (IV).

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

11.4. The Contractor's acknowledgment of any notice of assignment shall not be construed as a modification to the rights and obligations of the Contractor or Subcontractor under this Agreement. Nor shall the Contractor's acknowledgment of the notice constitute a separate agreement with the Assignee which varies the Contractor's or Subcontractor's rights and obligations under this Agreement, and shall not be held to guarantee the sufficiency or validity of the assignment.

12. INDEMNIFICATION

To the fullest extent permitted by law, Subcontractor shall indemnify, defend and hold harmless Contractor, its consultants, and agents and employees from and against all claims, liabilities, damages, suits, losses, penalties, fines, fees, costs and expenses of any nature whatever, including but not limited to attorney's fees, arising out of or resulting from performance of the Work, or arising in whole or in part by negligent acts or omissions of Subcontractor, a subcontractor of Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this paragraph.

The indemnification provided to the Contractor under this paragraph shall not be limited by the fact that statutory or other limitations may apply to damages, compensation or benefits payable by or for the Subcontractor.

13. INSURANCE

During the term of this Subcontract and any project awarded to the Subcontractor hereunder, the Subcontractor will, at its sole expense, secure and maintain and will file with Chugach, proper and acceptable evidence of the following described insurance, which coverage shall (1) be secured with an insurance company acceptable to Chugach, (2) be issued as a primary policy not contributing with and not in excess of any primary and/or excess coverage's carried by Chugach and (3) contain loss payable clauses satisfactory to Chugach for applicable coverage's.

1. **Worker's Compensation Insurance and Employer's Liability Insurance.**
   Worker's compensation insurance and employer's liability insurance in compliance with the laws of all applicable states and USL&H, Jones Act, and any other coverage's that may apply where the work is performed covering all employees engaged in the performance of the Work specified in this Subcontract and any project hereunder, including coverage for Employer's Liability for:

   a. Bodily Injury by Accident — $500,000 each accident
   b. Bodily Injury by Disease — $500,000 each employee
   c. Bodily Injury by Disease — $500,000 policy limit

2. General Liability Insurance, Comprehensive General Liability Insurance

13

CSS 000249

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

    including blanket Contractual, Property Damage and Independent Contractors Personal Injury, and Products-Completed Operations Liability Insurance insuring the indemnity agreement set forth in Paragraph 12 of this Subcontract with minimum limits as follows:

    a. Each Occurrence Limit - $1,000,000 combined single limit for bodily injury and property damage liability.
    b. Personal and advertising injury limit - $1,000,000.
    c. Products-Completed Operations Aggregate Limit - $2,000,000
    d. General Aggregate Limit (other than Products-Completed Operations) - $2,000,000. This policy shall be endorsed to have the General Aggregate limited apply on a "per project basis".

3. **Property Insurance.** Unless otherwise provided, the Contractor shall purchase and maintain property insurance upon the entire work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, subcontractors and sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and shall include "all risk" insurance for physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief.

4. **Automobile Liability Insurance.** Automobile liability insurance covering owned, non-owned and hired vehicles with limits of not less that $1,000,000 combined single limit for bodily injury and property damage liability resulting from any one accident.

5. **Excess/Umbrella Liability Insurance.** Excess/Umbrella insurance in an amount not less that $2,000,000 combined single limit for any one occurrence, and $2,000,000 annual aggregate. This policy is to provide no less that the same coverage described in Paragraphs 1, 2 and 4 above, and is to be in excess of required primary limits of liability. **(This paragraph is optional).**

6. **Builder's Risk.** Builder's risk insurance that also covers commissioning in an insured amount equal to the amount of the Project. **(This paragraph is optional).**

7. **Certificates of Insurance.** The contractor shall furnish original certificates of insurance evidencing compliance with the foregoing requirements, including the per project general aggregate, as a condition of initial prequalification as well as a condition of continued prequalification for the Contract period.

8. All liability insurance shall insure performance by the Subcontractor of the indemnification provisions under Paragraph 12 of this Subcontract Agreement.

9. All insurance required under this Subcontract shall be issued by insurance companies rated "A or A-/VI or better in the most recent edition of Best's

CSS 000250

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

Insurance Reports.

10. The minimum policy limits required in this section are exclusive of costs of defense. The Subcontractor's obligation to procure and maintain the insurance required in Paragraph 9, subparagraphs 1-9 above is not in derogation of, nor in substitution for Subcontractor's obligation to protect, defend, indemnify and save Chugach harmless under those provisions or under Paragraph 12, it being understood that Subcontractor's obligation to protect, defend, indemnify and save Chugach harmless are not dependent upon nor limited to the amount or availability of insurance proceeds.

11. **Additional Insured.** Chugach shall be listed as additional insured on the Subcontractor's policies for all liability insurance required under this terms of this Subcontract, and such liability insurance policies, including all primary policies and any excess/umbrella policies shall be primary to any primary and/or excess/umbrella liability insurance carried by Chugach.

12. **Waiver of Subrogation.** All policies shall be endorsed to provide that underwriters and insurance companies of the Subcontractor shall not have any rights to subrogate against Chugach.

13. **Certificates and Policies.** The Subcontractor shall furnish Certificates of Insurance evidencing the insurance required hereunder prior to Subcontract acceptance. Each Certificate shall provide (1) that thirty (30) days prior written notice shall be given to Chugach in the event of cancellation and/or amendments to the policies which adversely change the coverage, scope or amount of the policies and/or coverage provided thereunder; and (2) that the "other insurance" clause of the policies evidenced by the Certificates shall be interpreted to make it primary to any insurance policies maintained by Chugach which might otherwise be applicable.

14. **Premiums Responsibility.** All policies shall be endorsed to provide that there will be no resource against Chugach for payment of the Subcontractor's premiums.

15. **Severability on Interest.** All liability policies including excess/umbrella liability policies shall be endorsed to provide Chugach with a severability of interest clause applicable to claims made by Chugach against any other insured and, to the extent necessary contain waivers of any cross liability or insured versus waived exclusions.

14. MISCELLANEOUS PROVISION

Chugach Alaska Corporation Shareholder Hire. Contractor is a subsidiary of Chugach Alaska Corporation, an Alaska Native Regional Corporation, organized pursuant to the Alaska

15

CSS 000251

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

Native Claims Settlement Act of 1971. It is an important goal of the Contractor to maximize employment opportunities for the Chugach Alaska shareholders. Subcontractor agrees that whenever reasonable and consistent with good business practices, it will inform Contractor of employment opportunities for Chugach Alaska Corporation shareholders and consider Chugach Alaska Corporation shareholders for such positions.

15. **TERM OF CONTRACT**

Unless otherwise specified the term of this Agreement shall be from the effective date until terminated as provided herein.

16. **ENTIRE AGREEMENT**

The foregoing and Parts I through V, along with other documents listed below, constitute the entire Agreement between the parties. Terms and/or conditions, whether expressed or implied, other than rates that are stated in the rate schedule, field work orders, invoices, or any other documents, and those documents executed specifically as amendments by a representative of Contractor of the same status as the representative who executed this Agreement, shall neither alter, add to, nor subtract from the terms and conditions of this Agreement. Part III, Part IV and Part V are available for the review of the Subcontractor at the office of Chugach Support Services located at Dover Air Force Base, Building 447, Tuckegge Street.

CSS 000252

MASTER SUBCONTRACT AGREEMENT NO. 70-EML-003
CHUGACH SUPPORT SERVICES AND Jersey Shore Automation
DATE MAY 13, 2003.

17. GOVERNING LAW AND VENUE

Except as otherwise required by the Prime Contract, this Agreement, including its performance, validity and interpretation, shall in all respects be governed by the laws of the State of Alaska. Unless otherwise required by the Prime Contract, Anchorage, Alaska shall be the venue for any dispute arising out of or in connection with this Agreement.

CONTRACTOR:

Chugach Support Services

By: _____

Title: P.M.

Date: 5-20-03

SUBCONTRACTOR:

Jersey Shore Automation

By: DARYL S. MEEHAN

Title: VICE PRESIDENT

Date: 05/19/03

CSS 000253