IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, for the Use and Benefit of **JERSEY SHORE AUTOMATION, INC.**, a New Jersey corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>**CHUGACH SUPPORT SERVICES, INC.**, an Alaska corporation, and **SAFECO INSURANCE COMPANY OF AMERICA**, a Washington corporation,<br><br>*Defendants.* | C.A. NO. 04-1416 (JJF) |

### DECLARATION OF DARYL J. MEEHAN

I, Daryl J. Meehan, hereby declare under penalty of perjury that the facts set forth herein are true and correct of my knowledge, and, if called as a witness, I could and would testify competently as I set out below:

1. I am employed by Jersey Shore Automation, Inc. ("Jersey Shore") as Vice President of Operations.

2. I have been employed by Jersey Shore since January 1999.

3. Unless otherwise stated in this affidavit, I have personal knowledge of the facts set forth herein.

4. I was the senior project manager for all work performed by Jersey Shore at the Dover Air Force Base ("DAFB") under the Master Subcontract Agreement ("MSA") with Defendant Chugach Support Services ("Chugach") which is the subject of this litigation.

5. Throughout the work that Jersey Shore performed at the DAFB, Chugach incorrectly calculated wage rates by not using the Unit Price Guide, failed to process invoices in a timely fashion and failed to issue change orders and failed to perform as provided by supplemental agreements entered into by the parties.

6. The scope of the problem is exemplified by wage rates that were required to be paid, for example, to carpenters. By way of example and not by limitation, the wage rate specified in the RSMEANS data for a carpenter was $31.55. The United States Department of Labor General Wage Determination DE020009 required that carpenters actually be paid at a rate of $36.39. In addition, Jersey Shore was required to pay Workman's Compensation, taxes and insurance on top of the carpenter's wage making the true cost per hour $45.01. The UPG rate for carpenters was $54.58. Thus, for each hour a carpenter worked, the pricing was underestimated by $13.46 as a result of Chugach's estimating errors. In fact, when comparing the UPG rate against the RSMEANS rate the loss was $23.03 per hour.

7. In addition, despite repeated requests, Chugach refused to provide Jersey Shore with its estimates that were submitted to the United States Government for the DO/NTPs to determine what was requested by Chugach prior to issuance and acceptance of the DO/NTPs.

8. After Chugach expanded the scope of work required under the first DO/NTP and failed to use the UPG in calculating wage rates, I met with

Robert Hafey, representative of Chugach. The parties agreed that Chugach would apply to the government for payment of the extra work, correct wages under Delivery Order No. 5000, and use the correct wage rates in all future DO/NTP. Jersey Shore performed work required by Delivery Order 5001 including the additional work and services demanded by Chugach which were contained in the estimate provided by Chugach to the government, but excluded from the DO/NTP's to Jersey Shore.

9. Chugach again failed to utilize the UPG in measuring the wage rates for the second DO/NTP, failed to submit the change orders and continued to demand work not included in the DO/DNP's to Jersey Shore, causing another meeting. In September 2003, a meeting was held in Jersey Shore's offices.

10. The attendees at this meeting were, Robert Hafey, Terry Wright, and Michael Sparandera and myself. The purpose of the meeting was to establish expressly the terms under which Jersey Shore would consider accepting new delivery orders from Chugach to perform renovations on Buildings 300, 302, 778, 781 and 1272 at the DAFB. During the meeting, Chugach and Jersey Shore expressly agreed on the cost structure of DO/NTP's going forward. The modifications required, among other things, that Chugach would pay Jersey Shore a coefficient of 1.02 of the final line item on the DO/NTPs.