IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA<br>for the Use and Benefit of<br>JERSEY SHORE AUTOMATION, INC.<br><br>     Plaintiff,<br><br>vs.<br><br>CHUGACH SUPPORT SERVICES, INC., *et al.*<br><br>     Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C. A. No. 04-1416 (JJF) |

**EXHIBIT 1**

**TO**

**BRIEF OF DEFENDANTS
CHUGACH SUPPORT SERVICES, INC.
AND SAFECO INSURANCE COMPANY OF AMERICA
IN SUPPORT OF SUPPLEMENTAL MOTION
FOR SUMMARY JUDGMENT ON THE COMPLAINT AND THE
COUNTERCLAIM**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA, for )
the Use and Benefit of **JERSEY SHORE** )
**AUTOMATION, INC.**, a New Jersey )
corporation, )
           )
              *Plaintiff*, )         C.A. NO.  04-1416 (JJF)
           )
      v. )
           )
**CHUGACH SUPPORT SERVICES,** )
**INC.**, an Alaska corporation, and **SAFECO** )
**INSURANCE COMPANY OF AMERICA,** )
a Washington corporation, )
           )
          *Defendants*. )

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS'
FIRST SET OF REQUESTS FOR ADMISSIONS**

CONNOLLY BOVE LODGE & HUTZ LLP

       */s/ James D. Heisman*
James D. Heisman (# 2746)
M. Edward Danberg (# 2245)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899
(302) 658-9141
*Attorneys for Plaintiff Jersey Shore
Automation, Inc.*

Dated:  December 28, 2005

Jersey Shore Automation, Inc. ("Jersey Shore"), by and through its attorneys, provides these responses and objections to the First Set of Request for Admissions to Plaintiff Jersey Shore Automation, Inc., (the "Requests") that were propounded to the Plaintiff.

## PRELIMINARY STATEMENT

These responses are made solely for the purpose of this adversary proceeding. Each response is subject to all appropriate objections which would require the exclusion of any statement contained herein if the request was asked or if the response was made by a witness present and testifying in court. All objections and grounds are reserved and may be interposed at the time of trial.

Jersey Shore has not yet completed its investigation of the facts relating to this proceeding, discovery in this proceeding or preparation for trial of this proceeding. Consequently, these responses are given without prejudice to the right of Jersey Shore to produce any and all subsequently discovered evidence relating to proof of presently known material facts, and to produce all evidence, whenever discovered, relating to the proof of subsequently discovered material facts. Jersey Shore expressly reserves the right to amend and update these responses from time to time.

This preliminary statement is incorporated by reference to each of the responses set forth below as if stated in full therein.

## GENERAL OBJECTIONS TO REQUESTS

Jersey Shore's responses to each and every Request are made subject to these general objections and limitations. Jersey Shore may cite those objections which are particularly responsive to each Request in the separate response thereto, however, such attention is for

436255

emphasis only, and Jersey Shore's failure to specifically cite an objection in response to a particular Request should not be construed as a waiver of said objection.

1. Jersey Shore objects to these Requests as being out of time pursuant to the Pretrial Order in this proceeding.

2. Jersey Shore will respond to these Requests in accordance with the applicable Federal Rules of Civil Procedure and local rules. To the extent the definitions and instructions in the Requests exceed or alter the requirements of these rules and other applicable law, Jersey Shore objects thereto, and will respond as if the objectionable portions of the definition or instruction are deleted.

3. Jersey Shore objects to the Requests to the extent that they request information that would violate any constitutional, statutory or common law privacy interest of any current or former employee or representative of Jersey Shore or any other person or entity.

4. Jersey Shore objects to the Requests to the extent that they are vague, ambiguous, confusing, misleading, incapable of interpretation, and/or insufficiently defined.

5. Jersey Shore objects to the Requests to the extent that they request information or documents that are either in the possession of Defendants, or Defendants' counsel, subsidiaries, affiliates or insiders, whether because they have been previously provided by Jersey Shore or otherwise, or are publicly available or are equally as or more readily available to Defendants than Jersey Shore, on the grounds that such Requests are unduly burdensome and oppressive, vexatious and calculated to cause annoyance.

6. Jersey Shore reserves the right to challenge the competence, relevance, materiality, and admissibility of any information or document produced in response to the Requests, and

436255

Jersey Shore does not waive the right to raise any of its objections in any proceeding or at trial.

7. Jersey Shore objects to the Requests generally on the grounds that they are overly broad, unduly burdensome, vexatious and oppressive, and seek information which is not relevant to the subject matter of this action, and are not reasonably calculated to lead to the discovery of admissible evidence.

8. Jersey Shore objects to the Requests to the extent that they request disclosure of (i) work product, including, but not limited to, legal theories, legal opinions, mental impressions or other information of Jersey Shore's counsel, (ii) any information protected by any privilege, including, without limitation, the attorney-client privilege, the privileges accorded to settlement negotiations, the first amendment privilege, the trade secret or proprietary information privilege, or (iii) any other available and valid grounds for withholding information or documents from production, including, but not limited to, the Federal Rules of Civil Procedure.  Jersey Shore also objects to the Requests to the extent that they request information or documents collected, generated or prepared in anticipation of trial.

Subject to the foregoing general objections, and any specific objections hereinafter made, Defendant responds to the Requests as follows:

1.    On or about February 21, 2003, the United States of America awarded Chugach, and Chugach and the United States of America entered into, the Simplified Acquisition of Base Engineering Requirements Contract F07603-03-D-0002 (together with subsequent amendments, the "SABER Contract").

436255

**RESPONSE:** Admitted.

2.      Documents that Chugach previously provided Jersey Shore bates-stamped CSS 000001 through CSS 000234 constitute a true, complete and correct copy of the SABER Contract.

**RESPONSE:** Denied. Plaintiff is without sufficient knowledge or information to determine the completeness of the document.

3.      The SABER Contract was an indefinite delivery, indefinite quantity contract for construction, repair and renovation of various facilities at Dover Air Force Base, Delaware ("DAFB"). Under the SABER Contract, the Government would award individual construction projects by delivery orders on an as-needed basis.

**RESPONSE:** Admitted.

4.      Pursuant to the SABER Contract, Chugach and Jersey Shore entered into a Master Subcontract Agreement dated May 13, 2003 (the "MSA").

**RESPONSE:** Admiktted.

5.      Documents that Chugach previously provided Jersey Shore bates-stamped CSS 000235 though CSS 00253 and CSS 001421 though CSS 001486 together constitute a true, complete and correct copy of the MSA.

**RESPONSE:** Admitted.

6.      The MSA incorporated clauses in the SABER Contract such that "the Subcontractor [Jersey Shore] is obligated to Contractor [Chugach] in the same manner that Contractor is obligated to the Owner [defined as the "United States Government and Dover Air Force Base, DE"]."

**RESPONSE:** Admitted.

7.      The MSA did not obligate Jersey Shore to accept any Work or any DO/NTP.

436255

**RESPONSE**: Admitted.

8.      Under the MSA, Chugach could not compel Jersey Shore to accept any DO/NTP or to undertake any Work, except as Jersey Shore agreed to undertake.

**RESPONSE**: Admitted.

9.      Under the MSA, Chugach issued to Jersey Shore and Jersey Shore accepted contracts for several particular construction projects at DAFB, each such contract taking the form of a Delivery Order with Notice to Proceed ("DO/NTP").

**RESPONSE**: Admitted.

10.     Pursuant to the MSA, Chugach issued to Jersey Shore and Jersey Shore accepted DO/NTPs for, inter alia, Building 401 (Delivery Order No. 5001), Building 300 (Delivery Order No. 5010), Building 302 (Delivery Order No. 5018), Building 1272 (Delivery Order No. 5019) and Building 781 (Delivery Order No. 5021).

**RESPONSE**: Admitted.

11.     Attached to and accompanying these Requests for Admission are true, complete and correct copies of the following DO/NTPs, including Change Orders:

       A.      DO/NTP for Building 401, Exhibit 1.

       B.      DO/NTP for Building 300, Exhibit 2.

       C.      DO/NTP for Building 302, Exhibit 3.

       D.      DO/NTP for Building 1272, Exhibit 4.

       E.      DO/NTP for Building 781, Exhibit 5.

**RESPONSE**: Admitted.

12.     Jersey Shore accepted and entered into the DO/NTPs referenced in Request 11 above on the following dates, respectively:

- 6 -

436255

A.     Delivery Order No. 5001 for Building 401 dated June 24, 2003, agreed to and accepted by Jersey Shore on July 1, 2003.

B.     Delivery Order No. 5010 for Building 300 dated November 12, 2003, agreed to and accepted by Jersey Shore on November 17, 2003.

C.     Delivery Order No. 5018 for Building 302 dated November 17, 2003, agreed to and accepted by Jersey Shore on November 20, 2003.

D.     Delivery Order No. 5019 for Building 1272 dated November 12, 2003, agreed to and accepted by Jersey Shore on November 20, 2003.

E.     Delivery Order No. 5021 for Building 781 dated December 3, 2003, agreed to and accepted by Jersey Shore on December 8, 2003.

**RESPONSE:** Admitted.

13.     Prior to accepting the Delivery Orders referenced in Request No. 12 above, Jersey Shore did its own takeoffs based on the narrative statements of work (the "SOWs") that Chugach received from the Government and supplied to Jersey Shore.

**RESPONSE:** Denied.

14.     Jersey Shore accepted and entered into DO/NTP 5010 as of the date set forth in Request 12.B. above without expressing to Chugach any reservation, qualification or concern with respect to (a) the use, inclusion or absence of, (ii) the necessity for, (iii) an understanding or agreement with respect to or (iv) other concern regarding, UPG prices for any of the Work contemplated by or to be performed pursuant to the DO/NTP.

**RESPONSE:** Denied.

15.     Jersey Shore accepted and entered into DO/NTP 5018 as of the date set forth in Request 12.C. above without expressing to Chugach any reservation, qualification or concern with respect

436255

to (a) the use, inclusion or absence of, (ii) the necessity for, (iii) an understanding or agreement with respect to or (iv) other concern regarding, UPG prices for any of the Work contemplated by or to be performed pursuant to the DO/NTP.

**RESPONSE:** Denied.

16.     Jersey Shore accepted and entered into DO/NTP 5019 as of the date set forth in Request 12.D. above without expressing to Chugach any reservation, qualification or concern with respect to (a) the use, inclusion or absence of, (ii) the necessity for, (iii) an understanding or agreement with respect to or (iv) other concern regarding, UPG prices for any of the Work contemplated by or to be performed pursuant to the DO/NTP.

**RESPONSE:** Denied.

17.     Jersey Shore accepted and entered into DO/NTP 5021 as of the date set forth in Request 12.E. above without expressing to Chugach any reservation, qualification or concern with respect to (a) the use, inclusion or absence of, (ii) the necessity for, (iii) an understanding or agreement with respect to or (iv) other concern regarding, UPG prices for any of the Work contemplated by or to be performed pursuant to the DO/NTP.

**RESPONSE:** Denied.

18.     In DO/NTP 5010, Chugach and Jersey Shore agreed to a total price of $93,957.00 for all the Work to be performed under DO/NTP 5010, subject only to change orders that could increase or decrease the total price and thereby establish a new total price for the Work to be performed under DO/NTP 5010.

RESPONSE:  Admitted.

436255

19.    Pursuant to Change Order No. 1 to DO/NTP 5010 date January 29, 2004, Chugach and

Jersey Shore changed the total price to $158,474.00 and changed the completion date to no later

than March 1, 2004.

**RESPONSE:** Admitted.

20.    In DO/NTP 5018, Chugach and Jersey Shore agreed to a total price of $800,000 for all the

Work to be performed under DO/NTP 5018, subject only to change orders that could increase or

decrease the total price and thereby establish a new total price for the Work to be performed under

DO/NTP 5018.

**RESPONSE:** Admitted.

21.    Pursuant to Change Order No. 1 to DO/NTP 5018 dated March 31, 2004, Chugach and

Jersey Shore changed the total price to $803,323.91.

**RESPONSE:** Admitted.

22.    Pursuant to Change Order No. 3 to DO/NTP 5018 dated May 10, 2004, Chugach and

Jersey Shore changed the total price to $828,823.91.

**RESPONSE:** Admitted.

23.    Pursuant to an email from Terry Wright of Jersey Shore to George Molina of Chugach

dated June 11, 2004, Jersey Shore confirmed that it was "transfer[ring] back" to Chugach the

SSMR roof and the brick-face project, reducing the total price of DO/NTP 5018 by $279,150, to

549,673.91.

**RESPONSE:** Admitted.

24.    Attached to and accompanying these Requests for Admission as Exhibit 6, bates-stamped

CSS 001778, is a true, complete and correct copy of the email referenced in Request No. 23 above,

except for the unidentified handwriting at the top reading "Jersey Shore file."

436255

**RESPONSE:** Admitted.

25.    Pursuant to Change Order No. 4 to DO/NTP 5018 dated July 13, 2004, Chugach changed

the total price to $549,673.91 as Jersey Shore had requested and as Jersey Shore had confirmed in

the email referenced in Request No. 23 above.

**RESPONSE:** Admitted.

26.    In DO/NTP 5019, Chugach and Jersey Shore agreed to a total price of $230,000.00 for all

the Work to be performed under DO/NTP 5019, subject only to change orders that could increase

or decrease the total price and thereby establish a new total price for the Work to be performed

under DO/NTP 5019.

**RESPONSE:** Admitted.

27.    In DO/NTP 5021, Chugach and Jersey Shore agreed to a total price of $328,179.00 for all

the Work to be performed under DO/NTP 5021, subject only to change orders that could increase

or decrease the total price and thereby establish a new total price for the Work to be performed

under DO/NTP 5021.

**RESPONSE:** Admitted.

28.    Pursuant to Change Order No. 1 to DO/NTP 5021 dated April 20, 2004, Chugach and

Jersey Shore changed the total price to $330,959.00.

**RESPONSE:** Admitted.

29.    There is no uncertainty or ambiguity with respect to the fixed dollar prices in (i) DO/NTP

5010; (ii) DO/NTP 5019; and (iv) DO/NTP 5021.

**RESPONSE:** Denied.

436255

30.     Jersey Shore suspended all work under the MSA and the DO/NTPs on July 14, 2003 and

after that performed no work and provided no materials or services under the MSA and the

DO/NTPs.

**RESPONSE:** Admitted.

31.     The procedures for change orders to all DO/NTPs between Chugach and Jersey Shore was

set forth in ¶ 9 of the MSA between Chugach and Jersey Shore, which provided as follows:

    9.     CHANGES

            Contractor may, at any time by written order ("Change Order"),
without in any way invalidating this Agreement, make changes, revisions,
additions, or deletions (the "Changes") in the work which are required by changes
ordered by Owner under the Delivery Order or Prime Contract. Contractor's
determination (i) that a change ordered by Owner is a change within the general
scope of this Agreement, and (ii) that such changes require Subcontractor to make
a Change of the Work, shall be conclusive as to Subcontractor's obligation to
perform such Change. If any Change causes an increase or decrease in the cost
of, or time required for their performance of any part of the Work, whether
changed or not, Subcontractor's compensation, the period of performance, or
both, shall be adjusted in accordance with the changes in the Delivery Order or
Prime Contract, and the Delivery Order with NTP shall be modified in writing
accordingly. The Subcontractor shall proceed with the performance of the Work
as Changed immediately upon its receipt or in accordance with the terms of the
Change Order. Any claim for an adjustment to Subcontractor's compensation or
time for the performance of the Work not covered by a Change Order or other
written modification shall be made in writing to Contractor in accordance with
paragraph 8 [*sic*].

**RESPONSE:** Admitted.

32.     The only change orders, if any, to DO/NTP 5010, DO/NTP 5018, DO/NTP 5019 and

DO/NTP 5021 are contained with and are part(s) of the DO/NTPs, attached to these Requests as

Exhibits 1 through 5, respectively, and referenced in Request No. 11 above.

**RESPONSE:** Admitted.

33.     As of the date and time that Jersey Shore suspended all work at DAFB under the MSA and

the DO/NTPs, Jersey Shore had not submitted any request for a Change Order to Chugach

requesting, asserting, demanding or referencing any right to or interest in additional compensation or other payments based on UPG prices or Davis-Bacon Act wage and/or benefit rates.

**RESPONSE:** Admitted.

34.    As of the date and time that Jersey Shore suspended all work at DAFB under the MSA and the DO/NTPs, Chugach had not issued to Jersey Shore any Change Order regarding or referencing any right to or interest in additional compensation or other payments based on UPG prices or Davis-Bacon Act wage and/or benefit rates.

**RESPONSE:** Admitted.

35.    Paragraph 10 of the MSA provides as follows:

> 10.    CLAIMS
>
> In the event Subcontractor claims additional compensation or a further extension for the performance of the Work, as a result of a Change Order pursuant to Paragraph 7 [*sic*], it shall submit its claim in writing to Contractor not later than twenty (20) days after issueance of the Change Order or other act or occurrence giving rise to the claim. Any claim not submitted within such time period shall be barred. Contractor shall submit such written information with its claim as shall reasonably substantiate its claim or as Contractor or Owner shall reasonable request. Contractor will notify Subcontractor in writing of Contractor's decision on the claim within 30 days after receipt, including whether, in accordance with the applicable provisions of the Prime Contract, Contractor will pursue the claim on Subcontractor's behalf.

**RESPONSE:** Admitted.

36.    As of the date and time that Jersey Shore suspended all work at DAFB under the MSA and the DO/NTPs, Jersey Shore had not submitted any claim in writing to Chugach requesting, asserting, demanding or referencing any right to or interest in additional compensation or other payments based on UPG prices or Davis-Bacon Act wage and/or benefit rates.

**RESPONSE:** Admitted.

436255

37.    Attached to and accompanying these Requests for Admission as Exhibit 7 is a true, complete and correct copy of the written claim that Jersey Shore served on Chugach on July 23, 2004, following Jersey Shore's suspension of work on July 14, 2004.

**RESPONSE:** Admitted.

38.    In Exhibit 7 to these Requests for Admission, Jersey Shore made no reference to and no claim for additional compensation or other payments based on UPG prices.

**RESPONSE:** Admitted.

39.    In Exhibit 7 to these Rquests for Admission, Jersey Shore made no reference to and no claim for additional compensation or other payments based on Davis-Bacon Act wage and/or benefit rates.

**RESPONSE:** Admitted.

40.    Jersey Shore's first written notification to Chugach of any claim requesting, asserting, demanding or referencing any right to or interest in additional compensation or other payments based on UPG prices or Davis-Bacon Act wage and/or benefit rates came in the present lawsuit.

**RESPONSE:** Denied.

41.    Jersey Shore has no documents and is aware of no documents generated or dated in the period beginning October 4, 2003 and ended July 13, 2004 that reference, reflect or relate to any alleged agreement or commitment by or on behalf of Chugach to compensate Jersey Shore, or otherwise to reimburse or pay Jersey Shore, any amounts based on UPG prices.

**RESPONSE:** Denied.

42.    Jersey Shore has no documents and is aware of no documents generated or dated in the period beginning October 4, 2003 and ended July 13, 2004 that reference, reflect or relate to any alleged agreement or commitment by or on behalf of Chugach to compensate Jersey Shore, or

436255

otherwise to reimbursed or pay Jersey Shore, any amounts based on Davis-Bacon Act wage or benefit rates.

**RESPONSE**: Admitted.

43.    There is no document from or executed by Chugach pursuant to which Chugach committed, agreed or was obligated to compensate Jersey Shore, or otherwise to reimburse or pay Jersey Shore, any amounts based on UPG prices.

**RESPONSE**: Admitted.

44.    There is no document from or executed by Chugach pursuant to which Chugach committed, agreed or was obligated to compensate Jersey Shore, or otherwise to reimburse or pay Jersey Shore, any amounts based on Davis-Bacon Act wage or benefit rates.

**RESPONSE**: Admitted.

45.    Paragraph 1.0 of the SABER Contract, at CSS 000035, required Chugach to use the R.S.Means® database for pricing, applying certain multipliers against the R.S.Means® base to determine the prices for the individual tasks comprising each delivery order that the Government would issue to the successful contractor and for the delivery orders that Government did issue to Chugach for the individual projects, as follows (all emphases in original):

> In order to be considered for award, each offeror must submit four (4) coefficients, (CLINS 0001 through 0004); and identify that portion of the preceding coefficients attributed to project estimating and preparation of minimal design packages (CLIN 0005). The government uses these multipliers to determine the price of work for each task on individual delivery orders. The prices established in the R.S.Means® database bare costs (which means no markup for overhead and profit (O&P) column, will be multiplied by the City Cost Index Weighted Average Total for <u>Dover, Delaware, or geographically closest city listed</u> if <u>Dover, Delaware should be deleted</u>, and the coefficient to arrive at the actual price for a unit of work. The coefficients shall be represented as "net", a "decrease from" or an "increase to" the prices listed in the R.S.Means®. An offer of "net" would be represented as "1.0". An example of a decrease from the prices

436255

in R.S.Means® would be "0.98." An example of an increase above the prices listed in the R.S.Means® would be "1.10". The figure entered for CLIN 0005 shall be represented in the same manner (raw figure) as the coefficient.

**RESPONSE:** Admitted.

46.    Paragraph 8.0 of the SABER Contract, at CSS 000044, required Chugach to provide the Government with a hard copy of the R.S.Means® database and specified how Chugach had to develop estimates if a particular item were not included in the R.S.Means® database, as follows:

> The contractor shall provide, at no additional cost to the government, one (1) hard copy of unit price data to consist of the following R.S.Means® cost data books (one (1) complete total). Contractor shall provide the latest edition of these books to the SABER Chief and the Contract Administrator will only receive a copy of Facilities Construction Cost Data Book, within 30 days of latest release. If an item is not in the Means® Electronic Database used with the PULSAR® System, the contractor shall use the Means® Facility Cost Guide to locate the item. If the item cannot be found in the computerized version of the Facility Cost Guide, the contractor shall use the first eight (8) of the following books to develop the delivery order estimate. The contractor shall consider the item non-priced ONLY if it cannot be located in any of the first 8 guides.
> Building Construction Cost Data
>
> Mechanical Cost Data
> Plumbing Cost Data
> Electrical Cost Data
> Site Work Cost Data
> Concrete Cost Data
> Heavy Construction Cost Data
> Interior Cost Data
> Repair and Remodeling Cost Data (to be used for reference only)
> Light Commercial Cost Data (to be used for reference only) Residential Cost Data (to be used for reference only)[.]

**RESPONSE:** Admitted.

47.    The UPG included in the SABER Contract established prices only for items not in the RSMeans database or otherwise not ascertainable under ¶ 8.0 of the SABER Contract quoted immediately above.

**RESPONSE:** Denied.

48.    The minutes of the September 24, 2002 Preproposal Conference (bates-stamped JSA 349,

436255

351 & 354) with respect to the solicitation from the Government that became the SABER

Contract provided as follows with respect to the applications of RSMeans and the UPG:

### DEPARTMENT OF THE AIR FORCE
#### HEADQUARTERS 439th AIRLIFT WING (AMC)

FROM: LGCA (302-677-5012)

SUBJECT: Minutes of the Preproposal Conference

CONTRACT NUMBER: F07603-02-R-0009

PROJECT NUMBER AND TITLE: Simplified Acquisition of Base Engineer
Requirements (SABER)

DATE/TIME: 24 September 2002, 1300 hrs

LOCATION: Bldg 639, Base Supply Training Room, Room No. 224, Building 639

**** 

18. Attachment 6 is the Unit Price Guide (UPG). These are the items Dover AFB utilizes
that are not included in the Means. With the exception of the line item for rubbish
hauling/handling, if items are found in Means, they should use that item in lieu of the
item listed in Attachment 6. Ms McGee added that contractor must review the pricing
included in Attachment 6 and should they consider any of them to be inadequate, she
must received notification with justification within the next few days. Ms McGee [*sic*]
she will not entertain any complaints of inadequacies after award.

****

10. Question: What is the relationship between the R.S. Means® computerized pricing
guide and the UPG at Attachment 6.

Response: The coefficients (your overhead and profit) are applied to the R. S Means®
computerized pricing guide--bare costs. Coefficients are not applied to the UPG,
Attachment 6. The items in Attachment 6 are locally developed and include overhead and
profit. The items in Attachment 6 are only adjusted in accordance with the economic
price adjustment in Section H, pages 14 and 15. Non-prepriced Items (NPIs). Mr Shore
added that the items in the UPG are items that are either not included in the Means, or are
not covered adequately in the database; i.e., what Dover AFB, Delaware, requires
specifically.

11. Question: If an item appears in both the R. S. Means computerized database and the
UPG, does the contractor have an option of which to use.

436255

Response: Mr. Shore stated he does not feel the items, as specified, in the UPG are included in Means, and if they are in Means as we specify, we would like to know. With the exception of the rubbish handling/hauling, if items are in both Means and the UPG, the contractor should use Means.

**RESPONSE:** Admitted.

49.    As referenced in Request No. 45 above, quoting ¶ 1.0 from the SABER Contract, the

Government determined all prices for all work to be done pursuant to the SABER Contract.

**RESPONSE:** Denied.

436255

## CERTIFICATE OF SERVICE

    I, James D. Heisman, hereby certify that on this 28th day of December, 2005, I caused a true and correct copy of the foregoing **Plaintiff's Responses and Objections to Defendants' First Set of Requests for Admissions** to be served upon the following individuals in the manner indicated below:

*Via hand-delivery*
Edmund D. Lyons, Jr., Esquire
The Lyons Law Firm
1526 Gilpin Avenue
Wilmington, DE 19806

*Via email and U.S. mail*
Harvey A. Levin, Esquire
Birch, Horton, Bittner and Cherot
115 Connecticut Ave., N.W.
Suite 1200
Washington, DC 20036

 

_/s/ James D. Heisman_
James D. Heisman (# 2746)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, for the Use and Benefit of **JERSEY SHORE AUTOMATION, INC.**, a New Jersey corporation, | ) ) ) ) ) | |
| *Plaintiff,* | ) ) | C.A. NO.  04-1416 (JJF) |
| v. | ) ) | |
| **CHUGACH SUPPORT SERVICES, INC.**, an Alaska corporation, and **SAFECO INSURANCE COMPANY OF AMERICA**, a Washington corporation, | ) ) ) ) | |
| *Defendants.* | ) ) | |

### NOTICE OF SERVICE

I, James D. Heisman, hereby certify that on the 28th day of December, 2005, I caused a true and correct copy of **Plaintiff's Responses and Objections to Defendants' First Set of Requests for Admissions** to be served upon the following individuals in the manner indicated below:

*Via Hand-Delivery*
Edmund D. Lyons, Jr., Esq.
The Lyons Law Firm
1526 Gilpin Avenue
Wilmington, DE 19806

*Via First Class Mail & Email*
Harvey A. Levin, Esq.
Birch, Horton, Bittner and Cherot
115 Connecticut Ave., N.W.
Washington, DC 20036

**Connolly Bove Lodge & Hutz LLP**

_/s/ James D. Heisman_
James D. Heisman (# 2746)
M. Edward Danberg (# 2245)
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899
(302) 658-9141
*Attorneys for Jersey Shore Automation, Inc*

Dated:  December 28, 2005

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on the 28th day of December 2005, I caused a true and correct copy of the foregoing **Notice of Service of Plaintiff's Responses and Objections to Defendants' First Set of Requests for Admissions** to be served on the following individuals in the manner indicated below:

*Via E-Filing*
Edmund D. Lyons, Jr., Esq.
The Lyons Law Firm
1526 Gilpin Avenue
Wilmington, DE 19806

*Via E-Filing*
Harvey A. Levin, Esq.
Birch, Horton, Bittner and Cherot
115 Connecticut Ave., N.W.
Suite 1200
Washington, DC 20036


*/s/ James D. Heisman*
James D. Heisman (# 2746)

- 2 -

## Harvey Levin

| | |
|---|---|
| **From:** | Kristin Lawrence [kcaselaw@bdslegal.com] |
| **Sent:** | Wednesday, December 28, 2005 3:59 PM |
| **To:** | Harvey Levin |
| **Subject:** | RE: Please see attached response to your letter of December 27 |

-----Original Message-----
**From:** Harvey Levin [mailto:hlevin@dc.bhb.com]
**Sent:** Wednesday, December 28, 2005 3:44 PM
**To:** kcaselaw@bdslegal.com
**Subject:** Please see attached response to your letter of December 27