IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA<br>for the Use and Benefit of<br>JERSEY SHORE AUTOMATION, INC.<br><br>    Plaintiff,<br><br>vs.<br><br>CHUGACH SUPPORT SERVICES, INC., *et al.*<br><br>    Defendants | C. A. No. 04-1416 (JJF) |

EXHIBIT 5

TO

**BRIEF OF DEFENDANTS
CHUGACH SUPPORT SERVICES, INC.
AND SAFECO INSURANCE COMPANY OF AMERICA
IN SUPPORT OF SUPPLEMENTAL MOTION
FOR SUMMARY JUDGMENT ON THE COMPLAINT AND THE
COUNTERCLAIM**



DEPARTMENT OF THE AIR FORCE
436th Contracting Squadron (AMC)
639 Atlantic Street
Dover AFB, Delaware 19902-5639

RECEIVED
MAR 0 5 2004
BY: ----------------

4 March 2004

MEMORANDUM FOR: Mr Jim Hutton
Chugach Support Services, Inc.
560 East 34th Ave.
Anchorage, AK 99503-4196

FROM: 436 CONS/LGCA
639 Atlantic Street
Dover AFB DE l9902-5639

SUBJECT: Contract No. F07603-03-D-0002, Various Delivery Orders/

1. This office is in receipt of a formal complaint against Jersey Shore Automation, Inc., regarding improper payment of wages based on the classification of work performed. The complaint has been file by Mr Zachary M. Kelly, 2113 W. 17th Street, Wilmington, Delaware. On 23 February 2004, Mr Kelly provided documentation to support he worked on several projects for Jersey Shore doing carpenter's work and was paid as a skilled laborer at $20.00 per hour. Mr Kelly stated he used utility knives, router, drills, keyway saws, hammer, screw drivers, hammers nails, electrical saws, auger, grinder, jig saw, wrench, etc. Mr Kelly stated he performed work to include cutting and hanging drywall, building a wooden fence, grinding, installing doors and associated hardware. Mr Kelly provided approximate dates for his work, and a description of the work he performed on each project.

    a. DO 5006, Repair Maintenance Shop 712 – Mr Kelly stated to the best of his knowledge he worked on 5, 6, 7, 8, 9, 12, 13, 14, and 15 January 2004 on this project hanging doors and installing the hardware. Upon checking the payrolls for this project, Jersey Shore recorded 8 hours worked each day from 5 – 9 January 2004 for Mr Kelly at a skilled laborer's rate of $20.00 per hour. However, the payrolls for Jersey Shore do not reflect that Mr Kelly accomplished any work on 12 – 15 January 2004. It is further noted, all personnel with work recorded on payroll nos. 016 and 017 were classified as skilled laborers. Skilled laborer's rate is not appropriate in place of a skilled journeyman to perform such trades as electrician, painter, sheet metal worker, carpenter, etc. The work accomplished during this two-week period appears to have been work that would require classifications such as ceramic tile installer, carpenter, painter, electrician, etc. It does not appear that a skilled laborer should have accomplished any of the work recorded during the above mentioned time frame.

    b. DO 5010, Repair Command Suite Facility 300 – Mr Kelly stated to the best of his knowledge he worked at Bldg 300 on 24 December 2003 for two hours cleaning-up. I explained to Mr Kelly that Jersey Shore could have just paid him $13.61 for clean up. However, it is noted there were no hours for Mr Kelly reported on Jersey Shore's payroll for that date.

    c. DO 5019, Repair Munitions Maintenance Facility – Mr Kelly stated he had worked on this project for about 3.5 hours on or about 31 Dec 04. The sign-in sheet is not available for verification to determine how long Mr Kelly was on the site for that date; however, the payroll reflects five hours, not 3.5 hours, were paid to Mr Kelly as a skilled laborer. Mr Kelly stated when he was on the site he worked using a grinder on an existing exhaust for the furnace. At a minimum, this should be carpenter's rate, not a skilled laborer's rate.

    d. DO 5001, Repair Dormitory 401 – Mr Kelly stated when he worked on this project he was cutting and hanging drywall. Mr Kelly reported that to the best of his knowledge he had worked the following:

24 December 2003 – Mr Kelly stated he had worked for three hours installing drywall. The payrolls show zero hours for Mr Kelly on this date.

CSS 000649

26 December 2003 – Mr Kelly stated he had worked for eight hours installing drywall. The payrolls show zero hours for Mr Kelly.

29 December 2003 – Mr Kelly stated he worked for eight hours installing drywall. The payrolls show zero hours for Mr Kelly.

31 December 2003 – Mr Kelly stated he worked 1.5 hours installing drywall. The payrolls reflect zero hours for Mr Kelly.

2 January 2004 – Mr Kelly stated he worked for eight hours installing drywall. The payrolls reflect eight hours as an skilled laborer. Mr Kelly should have been paid carpenter's rate at $36.39 per hour.

e. DO 5018, Demolish Communications Facility/Repair Telephone Switch Facility – Mr Kelly stated except for 21 and 22 January 2004, the whole time he worked at Bldg 302 he was working on the installation of the fence. According to this Mr Kelly should have been paid a carpenter's rate; however, the payrolls reflect he was paid a skilled laborer's rate. Mr Kelly stated to the best of his knowledge he worked on this project as follows:

22 December 2003 – Mr Kelly stated he worked eight hours installing the fence. The payrolls reflect Mr Kelly worked eight hours as a skilled laborer. Mr Kelly should be paid carpenter's rate at $36.39 per hour.

23 December 2003 – Mr Kelly stated he worked eight hours installing the fence. The payrolls reflect Mr Kelly worked eight hours as a skilled laborer. Mr Kelly should be paid carpenter's rate at $36.39 per hour.

24 December 2003 – Mr Kelly stated he did not work at Bldg on this date, but did work at bldg 300 for two hours and bldg 401 for three hours, for a total of five hours. The payrolls reflect Mr Kelly worked as a skilled laborer for five hours at Bldg 302.

30 December 2003 – Mr Kelly stated he worked eight hours installing the fence. The payrolls show zero hours for Mr Kelly on this date.

16 January 2004 – Mr Kelly stated he worked eight hours installing the fence. The payrolls reflect Mr Kelly worked eight hours as a skilled laborer. Mr Kelly should be paid carpenter's rate at $36.39 per hour.

19 January 2004 – Mr Kelly stated he worked eight hours installing the fence. The payrolls show zero hours for Mr Kelly on this date.

20 January 2004 – Mr Kelly stated he worked eight hours installing the fence. The payrolls show zero hours for Mr Kelly on this date.

21 and 22 January 2004 – Mr Kelly stated he worked doing demolition for eight hours each day. The payrolls show zero hours for Mr Kelly on both dates. I informed Mr Kelly he does not get a carpenter's rate for demolition.

2. In an effort to try to establish Jersey Shore's record keeping, and because it is the only project that is secure and personnel must sign-in and out, I obtained some of the records (sign-in sheets) available for delivery order 5019, Repair Munitions Maintenance Facility. I have attached my findings to this letter. All conflicts noted on these sheets must be resolved. Leaving allowances for errors on dates and times, and even omissions of personnel signing in and/or out, data that is not legible, etc., it is very likely Jersey Shore's recording keeping of employees working on specific projects, the time worked on specific projects, and the classification and pay of employees are not correct. Because CNJ was also working at that same facility, 1272, in checking the sign-in sheets against their payrolls, their record keeping also appears to be incorrect and or lacking. It appears at least these two subcontractors are not recording and reporting the actual hours worked by each employee on the individual delivery orders as required.

CSS 000650

3. It appears the investigation has also revealed that Jersey Shore is not paying their personnel in accordance with the work they are performing. Many workers are hanging drywall in Bldgs 401 and 1272. Very few workers are receiving the carpenter's rate. There is an abundance of skilled and unskilled laborers listed on Jersey Shore's payrolls. This alone, is an indicator that something is not quite correct. Not only is restitution due Mr Kelly, but restitution is due other personnel that worked on the sites doing the same or similar work. During the interview with Mr Kelly he noted other people were doing the same work as him on each site he worked. All journeyman must be properly classified and paid.

4. You are further advised of the following:

### Davis-Bacon Act
### Executive Exemption

In order to meet the requirements of the Davis-Bacon Act contractors must submit as evidence one of the following:

Documentation that they were paid sufficient funds by the contractor to compensate each of them for the hours of work performed on the site at the required wage and fringe benefit levels for the classification performed, and expenses incurred for the work, including supplies and other employee labor.

**OR**

Certification that the criteria for the executive exemption as stated in CFR Title 29 Part 541.1 is met by each of them on an individual basis. Each must certify that the following circumstances are true:
    1. Their primary duty consists of the management of the enterprises in which they are employed or of a recognized department of subdivision thereof; **and**
    2. They customarily and regularly direct the work of two or more other employees therein; **and**
    3. They have the authority to hire or fire other employees or recommend the change in status of other employees; **and**
    4. They customarily and regularly exercise discretionary powers; **and**
    5. Does not devote more than 20 percent of their work hours in the work week those activities which are not directly and closely related to the performance of work described in 1 through 4 above; unless they own at least a 20 percent interest in the enterprise in which they are employed; **and**
    6. They are compensated for their services on a salary basis at the rate of not less than $155 per week; or if compensated on a salary basis not less than $250 per week, his/her primary duty consists of the management of the enterprise, and includes the customary and regular direction of the work of two or more employees therein, he shall be deemed to meet all the requirements of the executive exemption.

Employees that cannot meet all of the circumstances noted above must be paid in accordance with the Davis-Bacon Act. They must be properly classified and properly paid.

5. Taking into account the total hours Mr Kelly has worked, which he reports as 170 hours, Mr Kelly appears to be due restitution to a carpenter's rate on all but four hours. Restitution is then due on 166 hours. Mr Kelly's rate of pay paid was $20.00 per hour. All things considered, Mr Kelly should have been paid $36.39, a difference of $16.39 per hour, for a total of $2,720.74 due in restitution.

6. Proof of restitution must be provided in a manner acceptable to the Contracting Officer. Acceptable proof is defined as a signed certification including a sum total from each employee noting that they have received the restitution due. This certification must be dated, properly notarized, and must be submitted to the Contracting Officer along with a copy of the check which was provided to the employee for the restitution. Corrected payrolls are not acceptable proof of restitution made.

7. You must also provide proof of restitution or you must document in detail what all of the other employees of Jersey Shore were doing on projects in order to be classified as a skilled or unskilled laborer. If you find the other employees were misclassified, restitution is due those employees and proof shall be provided in the same manner as noted in paragraph 6 above.

8. Furthermore, you must respond to the apparent poor record keeping on payrolls and provide the action you are taking to prevent recurrence.

9. A detailed response to this letter, including proof of restitution, addressing conflicts on the attached, and other issues noted in this letter, is required not later than close of business 15 March 2004.

10. If you have any questions regarding this letter, please contact Mr Wayne Cohee at 302-677-5012.

JACQUELINE J. MCGEE
Contracting Officer

Attachment:
DO 5019, Payroll Comparison With Sign-In Sheet

cc: Chugach Support Services, Inc. (local office)

CSS 000652

DO 5019, Rpr Munitions Maintenance Facility 1272
Project No. 041013

## PAYROLL COMPARISON WITH SIGN-IN SHEETS

(Note: Some annotations are unclear and proper sign-in and sign-out procedures were evidently not always followed.)

### Jersey Shore

| | | | |
|---|---|---|---|
| 12-22-03 | Daniel Busch | 0814-1100 | |
| | | 1250-1450 | |

**Payroll does not reflect Mr Busch was on site at all.**

| | | |
|---|---|---|
| | William Barron | 0814-1100 |
| | | 1250-1450 |

**Payroll reflects Mr Barron worked on site for 8 hours.**

12-23-03   Daniel Busch   0735-1038
**Payroll does not reflect Mr D Busch on site at all.**
   William Barron   0735-1038
**Payroll reflects Mr W. Barron worked on site for 4 hours.**
   Kevin Barron   1310-1315
**Payroll does not reflect Mr K. Barron on site at all.**
   Rich Bush   1310-1315
**Payroll does not reflect Mr Bush on site at all.**

1-3-04   John Haake   0730-1120   1215-1530
   Scott Silagy   0730-1120   1215-1530
   Rich Wehrhahn   0935-1045   1345-1530
**Payroll reflects that there was no one from Jersey Shore working on site on 3 Jan 04.**

1-4-04   Kevin Barron   0715-1130
   Jeff Harrison   0715-0810
   Scott Silagy   0720-1130
   Jeff Adams   0720-1130
**Payroll reflects that there was no one from Jersey Shore working on site on 4 Jan 04.**

1-9-04   John Haake   0725-1230
**Payroll reflects Mr Haake worked on site for 6 hours.**
   Jeff Adams   0725-1130   1230-1600
**Payroll does not reflect Mr Adams on site at all.**
   Jeff Harrison   0735-0925   1120-1130   1230-1600
**Payroll reflects Mr Harrison worked on site for 8 hours.**
   Rich Wehrhahn   0735-0825   1100-1250
**Payroll reflects Mr Wehrhahn worked on site for 6 hours.**

CSS 000653

1-12-04        Jeff Russell            0715-1125    1150-1520
**Payroll reflects Mr Russell worked on site for 8 hours.**
               Jeff Harrison           0720-1125    1230-1520
**Payroll reflects Mr Harrison worked on site for 8 hours.**
               Kevin Barron            0720-1125    1230-1520
**Payroll reflects Mr K Barron worked on site for 9 hours.**
               Jeff Adams              0730-1125    1245-1520
**Payroll reflects Mr Adams worked on site for 8 hours.**
               John Haake              0730-1125    1230-1520
**Payroll reflects Mr Haake worked on site for 9 hours.**
               Rich Wehrhahn           0730-0800    1100-1225    1230-1520
**Payroll reflects Mr Wehrhahn wored on site for 9 hours.**
               Tom Evans               0945 – no time out
**No record of Mr Evans on payroll.**
               Tom Cousineau (?)       0945 – no time out
**No record of Mr Cousineau on payroll.**
               Cleve Posey             0945-1000    1420-1505
**If this is Mr Cecil Posey, payroll reflects he did not work on 12 Jan 04.**
**If this is Mr Cleve Posey, there is no record of this person on the payroll.**


1-13-04        Kevin Barron            0715-1130    1215-1520
**Payroll reflects Mr K Barron worked on site for 8 hours.**
               Jeff Harrison           0715-0825    0945-1130    1215-1520
**Payroll reflects Mr Harrison worked on site for 8 hours.**
               Jeff Russell            0715-0950    1100-1520
**Payroll reflects Mr Russell worked on site for 8 hours.**
               Rich Wehrhahn           0730-0800    1043-1130    1210-1414
**Payroll reflects Mr Wehrhahn worked on site for 8 hours.**
               John Haake              0730-1130    1210-1520
**Payroll reflects Mr Haake worked on site for 8 hours.**
               Jeff Adams              0730-1130    1215-1312    1335-1520
**Payroll reflects Mr Adams worked on site for 8 hours.**
               Cleve Posey             1045-1130
**If this is Mr Cecil Posey, payroll reflects he did not work on 13 Jan 04.**
**If this is Mr Cleve Posey, there is no record of this person on the payroll.**
               Mike Sparali (?)        1358-1430
**No record of any person close to this name on the payroll.**


1-14-04        Jeff Harrison           0710-0930    1000-1530
**Payroll reflects Mr Harrison worked on site for 8 hours.**
               Kevin Barron            0710 – (no time out)
**Payroll reflects Mr K Barron worked on site for 9 hours.**
               Jeff Wehrhahn           0735-1130
**Payroll reflects Mr Wehrhahn worked on site for 9 hours.**
               Jeff Russell            0740-1130
**Payroll reflects Mr Russell worked on site for 8 hours.**
               W. Lawson               0845-0930

**Payroll does not reflect that Mr Lawson worked on site on 14 Jan 04.**

| | | | | |
|---|---|---|---|---|
| 1-15-04 | Jeff Russell | 1150-1520 | | |

**Payroll reflects Mr Russell worked on site for 8 hours.**
    John Haake    1225-1520
**Payroll reflects Mr Haake worked on site for 8 hours.**
    Rich Wehrhahn   1228-1520
**Payroll reflects Mr Wehrhahn worked on site for 8 hours.**
    William Lawson   1320-1330
**Payroll does not reflect that Mr Lawson worked on site on 15 Jan 04.**
    Jeff Adams    1230-1500
**Payroll reflects Mr Adams worked on site for 8 hours.**
    Kevin Barron   1230-1520
**Payroll refelcts Mr Barron worked on site for 8 hours.**
    Jeff Harrison   1235-1520
**Payroll reflects Mr Harrison worked on site for 8 hours.**

1-23-04   Scott Silagy   0715-1230
**Payroll reflects Mr Silagy worked on site for 6 hours.**
    Jeff Adams    0715-1230  1255-1525
**Payroll reflects Mr Adams worked on site for 8 hours.**
    Jeff Harrison   0715-0815  1100-1140  1340-1525
**Payroll reflects Mr Harrison worked on site for 8 hours.**
    Jeff Russell    0730-1134  1215-1400
**Payroll reflects Mr Russell worked on site for 8 hours.**
    John Haake    0737-1230
**Payroll reflects Mr Haake worked on site for 6 hours.**
    Rich Wehrhahn   0737-1020
**Payroll reflects Mr Wehrhahn worked on site for 6 hours.**

1-26-04   Jeff Adams    0710-1115  1300-1515
**Payroll reflects Mr Adams worked on site for 8 hours.**
    Jeff Russell    0725-1120  1150 (?)-1515
**Payroll reflects that Mr Russell worked on site for 8 hours.**
    Rich Wehrhahn   0725-1115  1235-1530
**Payroll reflects Mr Wehrhahn worked on site for 9 hours.**
    Jeff Harrison   0730-1130  1300-1515
**Payroll reflects Mr Harrison worked on site for 8 hours.**
    William Lawson   0745-0810  0915-0925
**Payroll does not reflect that Mr Lawson worked on site on 26 Jan 04.**
    Kevin Barron   0810-1130  1300-1515
**Payroll reflects Mr K Barron worked on site for 9 hours.**
    Scott Silagyi    0810-1115  1300-1515
**Payroll reflects Mr Silagy worked on site for 9 hours.**
    Rick Born    0810-0835
**Payroll does not reflect Mr Born worked on site on 26 Jan 04.**
    John Haake    0820-1115  1235-1530
**Payroll reflects Mr Haake worked on site for 9 hours.**

1-27-04   Kevin Barron   0720-1120  1210-1515

   **Payroll reflects Mr K Barron worked on site for 8 hours.**
    Jeff Harrison  0720-1120  1210-1515
**Payroll reflects Mr Harrison worked on site for 8 hours.**
    Jeff Russell  0720-1120  1200-1515
**Payroll reflects Mr Russell worked on site for 8 hours.**
    Rich Wehrhahn  0720-1125  1245-1530
**Payroll reflects Mr Wehrhahn worked on site for 8 hours.**
    John Haake  0720-1125  1245-1530
**Payroll reflects Mr Haake worked on site for 8 hours.**
    Scott Silagyi  0817-1125  1304-1515
**Payroll reflects Mr Silagy worked on site for 8 hours.**
    Jeff Adams  0817-1125  1304-1515
**Payroll reflects Mr Adams worked on site for 8 hours.**
    William Lawson  0945-1000
**Payroll does not reflect that Mr Lawson worked on site on 27 Jan 04.**
    Rich Busch  1025-1055
**Payroll does not reflect that Mr Busch on site on 27 Jan 04.**

## CNJ

1-13-04  Rich Middleton  0730-0750  0915-0935
    K Iacone  0730 – (no time out)
    J Gordineer  0730-1600  0915-0935
    E Pugh    0730-0750
    Moore  0730 – (no time out)
    T Moore  0758 – (no time out)
    J Simering  0758-0930
**Payrolls reflect no one worked on the site on 13 Jan 04.**

1-14-04  Ed Pugh  0918-1640
**Mr Pugh is not on the payroll for 14 Jan 04.**
    T Moore  0921 (no time out)  1240-1600
**If this is for Albert Moore, it appears the hours recorded for 14 Jan 04 are 8.5 hrs. Payroll hours are unclear.**
    J Simering  0835- (no time out)  0921-0924
**Payoll reflects Mr Simering did not work on 14 Jan 04.**
    R Middleton  0835-0930  1045-1240
**Payroll appears to reflect Mr Middleton worked on site 9 hours. Payoll hours are unclear.**

1-15-04  R Middleton  1230-1235  1440-1635
**Payroll appears to reflect Mr Middleton worked on site for 9 hours. Hours are unclear.**
    L Wigmore  1428-1635
**Payroll appears to reflect Mr Wigmore worked 9.5 hours. Payroll hours are unclear.**
    T Moore  1428-1635
**If this is for Albert Moore, it appears the hours recorded for 15 Jan 05 are 8.5 hrs. Payroll hours are unclear.**

CSS 000656