IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA<br>for the Use and Benefit of<br>JERSEY SHORE AUTOMATION, INC.<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CHUGACH SUPPORT SERVICES, INC., *et al.*<br><br>　　　　Defendants | C. A. No. 04-1416 (JJF) |

**EXHIBIT 7**

**TO**

**BRIEF OF DEFENDANTS
CHUGACH SUPPORT SERVICES, INC.
AND SAFECO INSURANCE COMPANY OF AMERICA
IN SUPPORT OF SUPPLEMENTAL MOTION
FOR SUMMARY JUDGMENT ON THE COMPLAINT AND THE
COUNTERCLAIM**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>for the Use and Benefit of<br>JERSEY SHORE AUTOMATION, INC.<br><br>    Plaintiff,<br><br>vs.<br><br>CHUGACH SUPPORT SERVICES, INC., *et al.*<br><br>    Defendants | C. A. No. 04-1416 (JJF) |

## DECLARATION OF LORI CLOWERS
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 1746, Lori Clowers declares as follows:

1. I am the President of Defendant Chugach Support Services, Inc. ("Chugach"), over 21 years old and make this Declaration on personal knowledge. I have been President of Chugach since March 15, 2004.

3. Chugach's business includes performing general contractor construction services, largely at federal facilities pursuant to contracts with various branches of the United States Government.

4. Chugach was the contractor with the United States under the Simplified Acquisition of Base Engineering Requirements Contract F07603-03-D-0002 ("SABER Contract") for construction projects at Dover Air Force Base, Delaware ("DAFB").

5. To accomplish certain of the delivery orders that the Government issued to Chugach under the SABER Contract, Chugach subcontracted with Jersey Shore Automation, Inc. ("Jersey Shore") under a Master Subcontract Agreement dated May 13, 2003 ("MSA").

6. Pursuant to the MSA, Chugach issued to Jersey Shore and Jersey Shore accepted Delivery Orders With Notices to Proceed ("DO/NTPs") for, *inter alia*, Building 401 (Delivery Order No. 5001), Building 300 (Delivery Order No. 5010), Building 302 (Delivery Order No. 5018), Building 1272 (Delivery Order No. 5019) and Building 781 (Delivery Order No. 5021).

7. Chugach overpaid Jersey Shore for its work on these five buildings, as follows:

(i) On building 401, Chugach paid Jersey Shore in excess of $776,000, which was 68% of the total contract price of approximately $1,141,000. Jersey Shore had completed only 47% of the building, which translates to approximately $536,000, and therefore Chugach overpaid Jersey Shore by approximately $240,000 on building 401. Chugach also paid Jersey Shore's subcontractors and suppliers an additional $31,520 before termination, so that Jersey Shore received actually and constructively approximately $808,000, over 70% of the contract price, for 47% of the work and was overpaid more than $270,000 on building 401.

(ii) On building 302, Chugach paid Jersey Shore $398,000, which was more than 72% of the total contract price of approximately $550,000 (originally $803,000 but reduced by change orders to just under $550,000). Chugach also paid approximately $144,000 to Jersey Shore's subcontractors and suppliers before termination, for a total of $542,000, 98.5% of the total DO/NTP price. Jersey Shore had completed approximately 53% of the work, taking 76% of the time, a completion percentage that translates to approximately $291,500 including the payments

to Jersey Shore's subcontractors and suppliers that Chugach paid. Thus, on building 302, though behind, Jersey Shore was overpaid by approximately $250,000.

(iii) On building 300, Chugach paid Jersey Shore directly approximately $147,500 on a contract of $158,500. Jersey Shore did not complete building 300 but received 93% of the contract amount.

(iv) On building 1272, Chugach paid Jersey Shore $177,325 on the contract amount of $230,000, or 77%. Again, Jersey Shore did not compete the building prior to walking off the site.

(v) On building 781, Chugach paid Jersey Shore $222,800 on the $331,000 contract, again for an incomplete building.

8. All told, Chugach overpaid Jersey Shore by at least $349,000. This number is a minimum, for the following reasons. Chugach derived the number by subtracting from the $520,000 overpayments on buildings 401 and 302 the differences between the DO/NTP prices and the amounts paid to Jersey Shore on the three other buildings set forth above, giving Jersey Shore the maximum credit possible. Jersey Shore also left these other three buildings in various states of incompletion, however, and Chugach had to pay additional sums to complete these buildings. Thus, the real reduction (if any) from the $520,000 is smaller than the aggregate accorded here, and Jersey Shore almost certainly was overpaid by more than $349,000.

9. Due to Jersey Shore's lack of progress and defaults under the DO/NTPs, pursuant to the MSA Chugach requested a plan to remedy the defaults from Jersey Shore on July 13, 2004. On July 14, 2004, Jersey Shore informed Chugach that Jersey Shore was suspending performance and walking off the job. Jersey Shore refused to provide any proposal to remedy

its defaults as required by the MSA, and therefore pursuant to the MSA Chugach formally terminated Jersey Shore on July 20, 2004 for breach of contract. *See* Exhibits A-C to this Declaration, true and correct copies of my letter of July 13, 2004 to Jersey Shore, Jersey Shore's July 14, 2004 letter to me and my letter of July 20, 2004 to Jersey Shore.

10. In addition to the pre-termination amounts paid to Jersey Shore and its subcontractors and suppliers as set forth in ¶¶ 7 and 8 above, Chugach's documented post-termination costs to complete the five buildings that Jersey Shore left incomplete, in excess of the contract prices, were $1,916,116 (rounded): $962,312 for building 401, $833,300 for building 302, $56,970 for building 300, $49,241 for building 1272 and $14,473 for building 781. These costs to complete included approximately an additional $395,000 that Chugach paid directly to Jersey Shore's subcontractors and suppliers for labor and materials that the subcontractors and suppliers had provided Jersey Shore for work on the five buildings at DAFB under the MSA but for which Jersey Shore had not paid its subcontractors and suppliers.

11. Under Section 8.3 of the MSA (document CSS 000235 through 000253), Chugach is entitled, in addition to its actual costs incurred in performing the work, to reasonable overhead, profit and attorneys' fees." Chugach's reasonable overhead and profit aggregate 15% of the $1,916,116, for a total, excluding attorneys' fees yet to be determined, of $2,203,533 for costs to complete.

12. In addition to the foregoing, Jersey Shore failed and refused to pay all of its workers at DAFB the wages and fringes that the SABER Contract and the Davis-Bacon Act required, one consequence of which was that Chugach had to pay to the Government, through the U.S.

Department of Labor, $72,049 to compensate Jersey Shore's workers as the SABER Contract and the Davis-Bacon Act required.

I hereby certify under the penalties of perjury that the foregoing is true to the best of my knowledge, information and belief.

Dated: January 25th, 2006.

                                              _____
                                              Lori Clowers
                                              President, Chugach Support Services, Inc.

G:\505986\4\hal9429.doc



**Chugach Support Services, Inc.**



July 13, 2004

Mr. Darryl J. Meehan
Jersey Shore Automation, Inc
1500 Meeting House Road
Sea Girt, NJ 08750

Contract# F07603-03-D0002
Master Subcontract Agreement # 70-JSA-005
Re: Completion of Delivery Orders

Mr. Meehan,

The purpose of this letter is to inform you that your current progress on Delivery Orders under said Master Subcontract at Dover AFB is unacceptable. We have made several attempts to allow you to resolve this situation. You provided a new proposed Schedule of Completion and those dates have not been met. The Contracting Officer has expressed concern and Liquidated Damages are accruing daily.

Per your Master Subcontract Agreement, section (8.2), you are hereby notified that you have three working days to show that you will correct this default with diligence and promptness. If you do not remedy this situation we will proceed with termination of our Agreement as defined in your Master Subcontract.

We have also been notified by several of your subcontractors that they have not been paid for materials or services provided under this contract. Please provide proof of such payments for each Delivery Order.

Please contact us immediately with your corrective action plan.

Sincerely,

Lori Clowers
President
Chugach Support Services, Inc.

File No. 1005-419
Doc. No. 2
Logged ☐ Initial

560 E. 34th Avenue, Suite 300 • Anchorage, Alaska 99503-4196 • Phone 907.261.0374 • Fax 907.563.7701

CSS 000682

EXHIBIT B

### Jersey Shore Automation, Inc.
*"Providing Engineering and Installation Solutions Nationwide"*

July 14, 2004

Ms. Lori Clowers
President
Chugach Support Services, Inc.
560 E. 34th Avenue, Suite 300
Anchorage, AK 99503-4196

Contract# F07603-03-D0002
Master Subcontract Agreement# 70-JSA-005
Re: Suspension of operations at Dover AFB

Ms. Clowers:

This letter is being sent to inform you that effective close-of-business Wednesday, July 14, 2004 we will be suspending operations at all jobsites at Dover AFB.

Our subcontractors have been informed of this action and ordered to suspend work indefinitely. All tools and equipment owned by Jersey Shore Automation will be removed immediately.

This action is being taken as a direct result of Chugach Support Services consistent and deliberate violation of our Master Subcontract Agreement and associated Delivery Orders, including but not limited to, the non payment of our invoices for Delivery Orders 5001, 5019 and 5021.

During the term of our contract, Chugach Support Services has;

1. Refused to accept invoices in accordance with the terms set forth in Section 4.5,
2. Denied payment for materials furnished in violation of Section 4.5,
3. Refused to make progress payments within the allotted time frame as set forth in Section 4.2,
4. Withheld funds in violation of Section 4.4,
5. Demanded change orders in violation of Section 9 and
6. Failed to respond to Claims as set forth in Section 10.

These violations have been documented repeatedly and pertain to all Delivery Orders past and present.

File No. 1005-419
Doc. No. 3
Logged ☒ Initial AB

CSS 000686

Ms. Lori Clowers
Chugach Support Services, Inc.
Re: Suspension of operations at Dover AFB
July 14, 2004
Page 2 of 3

Additionally, it was anticipated that Chugach Support Services would invoice the government for progress made on each Delivery Order at least monthly.

Please refer to Sections 4.5 and 4.8 of our Master Subcontract Agreement and Section 52.232-5(b) Payments under Fixed-Price Construction Contracts of your contract with Dover AFB. Chugach Support Services has repeatedly failed to honor this critical component of our construction effort.

For example, during the period December 2003 through March 2004, Chugach Support Services had invoiced only 38% of the available invoicing opportunities.

Furthermore, the following issues have been raised on numerous occasions with the Chugach Support Services management team. To date none of these issues have been resolved.

1. The Unit Price Book (UPG) rates were not used in the creation of the estimates,
2. The master subcontract allows for monthly progress billing and payment for delivered materials, however, this has been prohibited every month,
3. Chugach Support Services has been unresponsive to RFIs,
4. Chugach Support Services has been unwilling to commit to agreements in writing,
5. Chugach Support Services represented contracts as profitable despite knowledge that the labor rates used would not cover the minimum required DBRA wages,
6. Provided documentation is often misplaced or lost by Chugach Support Services,
7. Delivery Orders are based on the scope of work and narrative only, Chugach Support Services requires all work to be completed in accordance with the estimate,
8. Chugach Support Services has failed to communicate changes in base working hours due to holidays or other special events and
9. Chugach Support Services continually adds to the scope of work without change orders and uses outstanding billing as leverage to force no cost changes.

Documentation supporting all of the above claims as well as our final invoicing will be forthcoming.

Although we have made every effort to work with Chugach Support Services to resolve these issues, we are no longer in a position to continue financing these projects on your behalf.

We now require immediate payment of all of our outstanding invoices and Chugach Support Services written assurance that the above mentioned issues will be resolved as soon as possible.

CSS 000687

Ms. Lori Clowers
Chugach Support Services, Inc.
Re: Suspension of operations at Dover AFB
July 14, 2004
Page 3 of 3

It is unfortunate that during your last visit to Dover AFB you did not reach out to us to resolve these issues. It is also worth mentioning that numerous calls to your office this year have not been returned.

I trust that this situation can be resolved quickly without requiring legal action.

Sincerely,

Daryl J. Meehan
Vice President, Operations

DJM: djm

c: Robert F. DiStefano, Law offices of Clark and DiStefano, P.C.

CSS 000688



**Chugach Support Services, Inc.**

CHUGACH ALASKA CORPORATION
LEGAL DEPARTMENT
Date Received 7/20/04
Routed Thru _LB, RH_
Calendared _____
File No _____ 1005-419

EXHIBIT C

July 20, 2004

Mr. Darryl J. Meehan
Jersey Shore Automation, Inc
1500 Meeting House Road
Sea Girt, NJ 08750

Contract# F07603-03-D0002
Master Subcontract Agreement # 70-JSA-005
Re: Termination for Cause

Mr. Meehan,

The purpose of this letter is to inform you that we have not received your corrective action plan per the request letter dated June 13, 2004.

Per your Master Subcontract Agreement, section (8), you are hereby notified that your Master Subcontract Agreement is terminated.

Chugach Support Services will proceed with furnishing materials, equipment, employees and subcontractors necessary to maintain the orderly progress of work and completion.

Sincerely,

*[signature]*

Lori Clowers
President
Chugach Support Services, Inc.

File No. 1005-419
Doc. No. 4
Logged ⊠ Initial _AB_